MINNEAPOLIS EASTERN RAILWAY COMPANY
AND ANOTHER v. CITY OF MINNEAPOLIS.

77 N. W. (2d) 425.

June 1, 1956—No. 36,758.

*Charles A. Sawyer,* City Attorney, and *D. J. Shama,* Assistant
City Attorney, for appellant.

*Warren Newcome, G. F. Fristensky, Stuart W. Rider, Jr., A. C.
Erdall,* and *G. F. Bennett,* for respondent Minneapolis Eastern
Railway Company.

*Richard Musenbrock,* for respondent Minneapolis & St. Louis
Railway Company.

414

*Marshall F. Hurley,* Corporation Counsel, and *Terrance S. O'Toole,* Assistant Corporation Counsel, for city of St. Paul, amicus curiae.

*Harry E. Weinberg,* City Attorney, for city of Duluth, amicus curiae.

MATSON, JUSTICE.

Appeal from a judgment of the district court affirming an order of the Railroad and Warehouse Commission.

The primary question upon this appeal is whether the Railroad and Warehouse Commission, *in the absence of the holding of at least one public hearing in the city of Minneapolis as required by M. S. A. 219.39,* had jurisdiction to issue an order apportioning between respondent railroads and the city the cost of reconstructing an existing grade separation bridge over the respondents' tracks in said city, when the need for such reconstruction was admitted by both the respondents and the city and no issue was involved as to the dangerous nature of the crossing.

Respondents filed a petition with the Railroad and Warehouse Commission asking for an order for the construction of a new bridge to replace the present bridge which carries First Street over respondents' right-of-way and tracks between Third Avenue South and Fourth Avenue South in the city of Minneapolis. The commission was also asked to apportion the cost of said construction between respondents and the appellant, hereinafter referred to as the city. Notice of the hearing was served upon each of the parties. Subsequently counsel for the city requested a postponement of the hearing, and notice thereof was also duly served. Thereafter a formal hearing was held before the commission in St. Paul. The commission, having found that it was mutually *agreed by all the parties that the present bridge was unsafe and that a new bridge was needed,* ordered the reconstruction of the bridge and that the cost thereof be borne equally by each of the two respondent railroads and the city.

The city appealed to the district court, which concluded that the commission had jurisdiction to apportion the cost of construction and affirmed the commission's order.

In the light of our decision in N. P. Ry. Co. v. City of Duluth, 243 Minn. 84, 67 N. W. (2d) 635, the petition of the respondent railroads was sufficient to invoke the jurisdiction of the Railroad and Warehouse Commission despite the fact that said respondents are not expressly designated in § 219.39 as parties authorized to institute proceedings by written complaint. No issue arises therefore as to the propriety of the initiatory step in invoking the commission's jurisdiction.

A basic issue does arise, however, as to the jurisdiction of the commission to issue an order apportioning the costs of the reconstruction without first having held a public hearing in the city where the grade separation bridge is located. Insofar as here pertinent, § 219.39 provides:

"Upon written complaint * * * filed with the commission,. * * * that any railroad crossing with any street in the city or village, or town * * * *is dangerous to life and property, and giving the reasons therefor,* the commission shall proceed to investigate the matters contained in the complaint, giving the complainant and the railroad company an opportunity to be heard, at a time and place to be fixed by the commission, after such notice as the commission may deem reasonable; *provided, that at least one public hearing shall be held in the town, village, or city, in which the crossing is located.*" (Italics supplied.)

Section 219.40 provides:

"The commission shall decide the matter set forth in the complaint and make a report in writing thereof, including findings of fact, and make such order as it shall deem proper in the premises and, *if the commission shall find the crossings to be dangerous,* it may require the railroad company complained of * * * to construct an overhead or *maintain* an underground crossing *and divide the cost thereof* between the railroad company, the town, county, municipal corporation, or state highway department interested, on such terms and conditions as to the commission may seem just and equitable. * * * *If the* railroad and warehouse *commission* * * *

*orders the* construction, *reconstruction* or maintenance of an under-ground or overhead crossing on a state trunk highway, the division of the costs between the railroad and state shall be on the basis of benefit to each and the state's share shall be paid from the state trunk highway fund." (Italics supplied.)

No state trunk highway is here involved.

Whether the holding locally of at least one public hearing is juris-dictional when the sole issue to be decided is the apportionment of the cost of the reconstruction of such bridge depends on the ascer-tainment of the legislative intent. Sections 219.39 and 219.40 are derived from the same source, namely, L. 1911, c. 243, §§ 1, 2. As indicated by the italicized language of § 219.39 as above quoted, the written complaint authorized by that section for invoking the com-mission's investigatory powers is expressly directed to the raising of the basic and controlling issue of whether a specific railroad cross-ing in a city *is dangerous to life and property and to the giving of the reasons why it is dangerous.* This express statutory purpose of the written complaint was found in the original enactment of 1911[1] and was carried forward unchanged through successive amendments of that enactment.[2] Likewise, the proviso that at least one public hearing must be held in the city or village where the crossing is located was found in the original enactment and has, despite the amendatory acts, been carried forward unchanged to the present time.

Section 219.40 was enacted simultaneously with the progenitor of § 219.39 and to implement the latter section. It will be noted that § 219.40 provides that, once the commission has decided the matter set forth in the written complaint under § 219.39, it is authorized to take affirmative remedial action *if the commission shall find the crossing to be dangerous.* Despite several amendments[3] increasing the commission's powers to give affirmative relief, the question of whether a crossing is dangerous has been preserved as the basic

[1] L. 1911, c. 243, § 1.
[2] L. 1923, c. 134, § 1; see footnote 3, *infra.*
[3] L. 1923, c. 134, § 2; L. 1913, c. 294, § 1; L. 1951, c. 179.

issue to be raised and adjudicated upon the written complaint. Undoubtedly as originally enacted in 1911, the provision in § 219.39, that at least one public hearing must be held in the city or village where the crossing is located, was inserted therein by the legislature to give the local residents a convenient opportunity to express their views and give evidence in support of the written complaint by their authorized representatives that a crossing in their community is dangerous to their lives and property. In short, the provision for a hearing at home was for the specific purpose of insuring that the danger cry of the local residents would not go unheeded. No issue was then involved as to any division of the cost of a grade separation bridge since the railroad companies were then, at their own expense, subject to the common-law duty of carrying their tracks over or under highways when necessary.[4]

It was not until the enactment of L. 1923, c. 134, § 2 (amending what is now § 219.40), that the commission was authorized—if a crossing was found to be dangerous—to divide the cost of constructing and maintaining an overhead or underground crossing between the railroad company and the town, county, municipal corporation, or state highway department as should seem just and equitable. Two years later the legislature passed L. 1925, c. 336, § 13 (now § 219.27), which empowered the commission to apportion the cost between the parties when they could not agree upon a reasonable division of the expense of a relocation of a crossing. We have only these two statutory enactments providing for the apportionment of costs by the commission.

Did the 1923 amendment (L. 1923, c. 134, § 2) to § 219.40 for the apportionment of the costs of a grade separation or reconstruction,[5] expressly or by implication, show a legislative intent that the basic purpose for holding at least one public hearing locally, pursuant to

---

[4]See, State ex rel. City of St. Paul v. Minneapolis, St. P. & S. S. M. Ry. Co. 190 Minn. 162, 164, 251 N. W. 275, 276; 16 Dunnell, Dig. (3 ed.) § 8121.

[5]In State ex rel. City of St. Paul v. Minneapolis, St. P. & S. S. M. Ry. Co. 190 Minn. 162, 251 N. W. 275, this court held that § 219.28 applied to both original grade separation construction and to a subsequent reconstruction thereof.

§ 219.39, should be expanded to include such apportionment of costs? We believe not. This amendment, as well as other amendments, left untouched the express language originally used to indicate both the purpose of the written complaint and of the local hearing, namely, that of determining whether a crossing was dangerous to life and property. The intent to preserve the purpose of the local hearing, as originally limited, is further confirmed, if we construe, as we must, the various crossing statutes so as to give them, if possible, full effect without attributing absurdity to the legislature. In State v. N. P. Ry. Co. 176 Minn. 501, 507, 223 N. W. 915, 917, in reviewing the various acts since 1911 (c. 243) whereby the legislature withdrew from municipalities certain powers delegated to them and transferred the same to the commission, this court appropriately said:

"* * * In enacting these several statutes, the legislature is presumed to have known and had in mind all existing laws relating to the subject matter and to have enacted them in the light of such knowledge; and they must be construed so as to harmonize with each other and give full effect to all so far as this may reasonably be done."[6]

If we were to approve the city's contention that a local hearing must be held when the sole issue involved relates to the apportionment of costs under §§ 219.39 and 219.40, we would thereby attribute to the legislature an intent to bring about an absurd result since no such local hearing is required under § 219.27 with respect to the commission's apportionment of the cost of a *relocation* of a crossing. There is no logical basis for a distinction between the construction or reconstruction of a grade separation and a relocation of a grade separation as far as the element of cost affects the local community. A grade separation cannot be relocated without involving all the cost elements of a grade-separation reconstruction.[7] If the legislature had intended that a local hearing was essential to an appor-

[6]See, 17 Dunnell, Dig. (3 ed.) § 8984.
[7]Section 219.27 obviously may apply to any crossing, inclusive of one where a grade separation already exists.

tionment of the costs, undoubtedly it would have applied that same requirement to the cost apportionment under § 219.27, but it did not. We can only conclude that the legislature never intended the local hearing provision of § 219.39 to be a prerequisite to the issuance of an order by the commission for the apportionment of the costs of the reconstruction of a grade separation where no other issue is involved.

Our interpretation of §§ 219.39 and 219.40, to the effect that the sole purpose of a local hearing is to make certain that a local complaint that a crossing is dangerous shall not go unheeded, is further confirmed by the fact that when the commission (pursuant to § 219.14, subd. 1) *of its own motion* (without any written complaint) investigates and determines that a crossing is dangerous and requires a grade separation, no local hearing is required and the commission, pursuant to § 219.14, subd. 2, need only give the railroad reasonable notice of the investigation and an opportunity to be heard before any order is made. In other words, where the commission of its own motion takes cognizance of the dangerous nature of the crossing, the legislature recognized that there is no need for a local hearing. Furthermore, it is significant that, although several statutory sections of c. 219 provide for a variety of corrective actions to be taken by the commission to safeguard life and property at dangerous crossings, and that these sections each require a hearing before the commission makes its corrective order, § 219.39 is the only one which requires that at least one hearing be held in the community where the crossing is located. See, e.g., § 219.14 (any measure including a separation of grades) ; § 219.23 (watchman) ; § 219.24 (crossing gates, etc.) ; and § 219.25 (gate operators).

The city asserts, however, that § 219.403 (L. 1951, c. 179, § 3) has saved to it all of its rights under its ordinance of 1879 (Charter, Ordinances, etc. of Minneapolis, 1872 to 1892, p. 696). Since the city had no authority with respect to the bridge prior to 1951, the date of enactment of § 219.403, the question presented is whether the effect of that provision was to revive or reinstate the ordinance of 1879. A careful reading of § 219.403 shows that no such effect was intended. The section reads:

"Nothing in sections 161.03, 219.40, 219.403 shall be construed to change any *existing law* relating to the rights and liabilities of any city, * * * in connection with the construction or maintenance of any railroad crossing, grade separation, * * * or to impair the terms or conditions of any existing arrangement or agreement, * * * between any railroad company and any municipality with reference to the maintenance of any railroad crossing, grade separation, or signal system." (Italics supplied.)

Since the *law existing* at the time that § 219.403 was enacted placed exclusive authority to apportion costs in the Railroad and Warehouse Commission, it is obvious that § 219.403 was not intended to effect a revival of the ordinance of 1879. Clearly, the 1879 ordinance has not been in effect subsequent to enactment of L. 1921, c. 500. State v. N. P. Ry. Co. 176 Minn. 501, 503, 504, 223 N. W. 915, 916.

The judgment of the district court is affirmed.

Affirmed.