## STANLEY TEEMAN v. ROGER JUREK.

251 N. W. 2d 698.

March 4, 1977—No. 46644.

*Johnson, Gubbe & Associates* and *Robert G. Gubbe,* for appellant.

*Norton, Jergens, Hebert, Cass & Jepsen* and *W. E. Jepsen,* for respondent.

Heard before Kelly, Todd, and Winton, JJ., and considered and decided by the court en banc.

CRANE WINTON, JUSTICE.*

. This case comes here upon an appeal from a judgment entered upon findings of fact, conclusions of law, and order for judgment made in favor of defendant-respondent following a trial to the court sitting without a jury in an action to recover damages for breach of contract for the sale of soybeans by plaintiff to defendant and the latter's counterclaim against plaintiff-appellant for breach of contract for the sale of corn. At the beginning of the trial the parties stipulated that defendant received from plaintiff soybeans valued at $8,544.20 for which defendant has not paid plaintiff. For the reasons hereafter stated, the judgment is affirmed.

In the spring of 1973, Stanley Teeman and Roger Jurek made an agreement by the terms of which the former undertook to sell to the latter 48,000 bushels of corn to be delivered in installments at per bushel prices as follows:

| Bushels | Delivery Date | Price | Contract Price |
|---|---|---|---|
| 10,000 | June 1973 | $1.47 per bu. | $14,700 |
| 18,000 | August 1973 | $1.49 per bu. | $26,820 |
| 20,000 | February 1974 | $1.63 per bu. | $32,600 |

The parties made their bargain with knowledge that defendant intended to resell the corn to Farmers Union Grain Terminal Association (GTA) and that the bushel price for each installment was set in relation to what GTA was then paying for future delivery of corn in the months indicated. The agreement also provided that defendant would receive from plaintiff the sum of 10 cents per bushel for hauling the corn from plaintiff's farm at Harris, Minnesota, to GTA's terminal elevator at Superior, Wisconsin. That figure included a 7-cent factor for costs and 3 cents for profit.

After he reached the agreement to buy plaintiff's corn, Jurek signed a contract to sell the corn purchased from plaintiff to

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

GTA, and late in June 1973 he begain hauling the first install-
ment to GTA's Superior terminal. GTA made payment based on
the weight of the delivered corn as determined on scales in-
spected by Federal and state grain inspectors. Grading deduc-
tions, however, were made from amounts otherwise due for
damaged corn, foreign material, and for corn weighing less than
54 pounds per bushel.

At plaintiff's request, defendant caused some, but not all, the
corn loads to be weighed at Pine City, Minnesota, as a cross-
check.[1] Although the accuracy of the procedure followed in mak-
ing the cross-check is disputed, some shortages in scale weights
at the Superior terminal were indicated.[2]

In July 1973, Jurek paid Teeman $13,498.59 for corn delivered
to the GTA terminal in June 1973. The payment reflected a grad-
ing deduction amounting to $135 to $140 and a claimed weight
shortage totaling $75 to $80 on the seven loads cross-checked at
Pine City. Because of plaintiff's complaints about the grading
deductions and the claimed discrepancies in scale weights, GTA
agreed to cancel the grading deductions, although it did not re-
vise its evaluation of the delivered corn, and to make payment
for the amount of the deductions for grading and of the claimed
weight discrepancy. It further agreed to allow future corn ship-
ments to be weighed at any one of three other elevators. Those
commitments were communicated to plaintiff in August 1973.

In mid-August 1973, GTA delivered a check in part payment
in accordance with its commitment to Jurek, who in turn en-
dorsed and gave it to Teeman. The defendant subsequently re-
ceived from GTA a second check, but instead of endorsing and
delivering that check to the plaintiff, the defendant held and
ultimately cashed it.

---

[1] Seven of the eleven loads hauled during June 1973 were weighed at
Pine City.

[2] Load-weight obviously was a matter of importance, because it was
the basis on which the parties determined the amounts Jurek was obli-
gated to pay Teeman.

Notwithstanding GTA's commitments, Teeman withheld delivery of corn in August. Under date of September 14, 1973, he wrote a letter to GTA with a copy to defendant in which he stated in part:

"In my previous letter to you on August 8th, I stated that I would not deliver any more corn to Superior and take the losses I have taken on every load that had a check weight on it. This still stands with me, if there is not going to be any other adjustments than what has been made, there is not going to be any more corn. In fact the 18,000 bu. is now gone and there is also another contract for 20,000 bu. for February 1974 delivery that will not be delivered either under the conditions I have experienced with delivery of corn to Superior up to this time."

In fact, plaintiff disposed of his corn on the Minneapolis open market, and, consequently, there were no further deliveries of corn to defendant who in turn made none to GTA.

Thereafter, Jurek settled his obligation to deliver corn in August to GTA at a price of $1.49 per bushel for the difference between the contract price and of the market price of $2.20 per bushel on the date of cancellation or default (August 31, 1973), or 71 cents per bushel. That amounted, the trial court found, to $12,780. The February 1974 default he settled at 20 cents per bushel for a total of $4,000.

In November 1973, the parties here agreed to a second contract for the sale by plaintiff to defendant of a quantity of soybeans for resale and delivery to Honeymead Corporation. The beans were delivered and payment made by Honeymead to the defendant.

The plaintiff brought suit against defendant to recover the amount due him on the soybean contract when the defendant failed to make payment. The defendant counterclaimed to recover damages which he sustained by reason of the plaintiff's default on the corn contract.

At the opening of the trial the parties stipulated that defendant owed plaintiff $8,544.20 on the soybean contract. Follow-

ing the close of the evidence, the trial judge made findings of fact, conclusions of law, and an order granting judgment for defendant against plaintiff in the sum of $8,675.80. The trial court found, among other things, that plaintiff had questioned the adjustments in the ultimate price for the corn delivered in June 1973, made for test weight, foreign material, and damage, and that he also questioned the correctness of the weights of corn delivered to Superior. The court further found that defendant had obtained assurances from GTA that it would reimburse plaintiff for the deductions made and that if plaintiff was not satisfied with the weighing procedure at Superior, the remaining two deliveries could be made to another elevator. The court concluded that plaintiff was not justified in withholding delivery of the 38,000 bushels of corn and assessed total damages to defendant of $17,220 against which he offset the $8,544.20 owed by defendant to plaintiff for the soybeans. Whether the evidence and the law support the trial court's order for judgment is the question to be decided here.

The contract between plaintiff and defendant was one for the sale of goods and, therefore, is governed by the Uniform Commercial Code—Sales, Minn. St. 336.2—101 to 336.2—725.[3] Plaintiff contends that under the facts and the applicable law he was entitled to withhold delivery of the corn. The trial court specifically concluded that he was not justified in doing so. Plaintiff's second contention is that the trial court erred in implicitly finding that defendant did not repudiate the contract by retaining GTA's second refund check. Finally, plaintiff maintains that the trial court incorrectly included defendant's settlement with GTA in the computation of damages.

---

[3] Minn. St. 336.2—102 provides in part: "Unless the context otherwise requires, this article applies to transactions in goods * * *."

Minn. St. 336.2—105(1) states in part: " 'Goods' means all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action."

■ Is the evidence sufficient to sustain the trial court's finding that plaintiff was not entitled to withhold delivery under Minn. St. 336.2—609? That statute, in so far as applicable here, provides:

"(1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.

"(2) Between merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.

\* \* \* \* \*

"(4) After receipt of a justified demand failure to provide within a reasonable time not exceeding 30 days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract."

That Teeman as seller had reasonable grounds for insecurity seems by no means clear from the evidence. To be sure, he complained about short weight and grading discounts, but whatever the merit of those complaints the evidence more than sufficiently shows that he received adequate assurance that his complaints would be remedied. He was promised reimbursement for the grading discounts and was given the option of directing future deliveries at another elevator. Moreover, nothing can be found in the transcript of the evidence to indicate that Teeman ever in writing demanded adequate assurance of due performance from Jurek. This court concludes that the evidence amply sustains the trial court's finding that the plaintiff was not entitled to withhold delivery of the corn under Minn. St. 336.2—609.

■ Plaintiff contends on appeal that the trial court by implication must have found that defendant did not repudiate the

contract by failing to endorse and transmit GTA's second reimbursement check to him and that such a finding was erroneous. Apparently plaintiff contends that defendant's withholding of the second check constituted a repudiation of the contract and cites Jurek v. Thompson, 308 Minn. 191, 241 N. W. 2d 788 (1976). That contention has no merit. It does not clearly appear that Jurek had received the second check from GTA before Teeman wrote the letter of September 14, 1973, a fact that would seem basic to plaintiff's position. Nor is there any evidence of defendant's having informed plaintiff either that he had received the check or that he intended to withhold it. In short, there is no evidence surrounding the second check sufficient to support a finding that defendant's conduct with respect to it justified withholding delivery under Minn. St. 336.2—610.[4]

Jurek v. Thompson, *supra,* affords no support to defendant's contentions here. In that case the buyer communicated to the seller his intention to withhold payment for 4,000 bushels of corn to be sold under one contract as a setoff against damages he claimed for alleged breach of a second contract. This court held that since Minn. St. 336.2—717[5] makes the right of setoff avail-

---

[4] Minn. St. 336.2—610 provides: "When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may
  (a) for a commercially reasonable time await performance by the repudiating party; or
  (b) resort to any remedy for breach (section 336.2—703 or section 336.2—711), even though he has notified the repudiating party that he would await the latter's performance and has urged retraction; and
  (c) in either case suspend his own performance or proceed in accordance with the provisions of this article on the seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods (section 336.2—704)."

[5] Minn. St. 336.2—717 provides: "The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract."

able only when the claimed damages result from a breach of the same contract under which any part of the purchase price still is due, the seller could properly interpret the seller's declared intention as a wrongful refusal to pay on the contract and thus justification for withholding delivery. In the instant case, by contrast, withholding the second check could quite properly be viewed as a setoff against damages incurred because of plaintiff's refusal to perform the balance of his part of the contract.

◼ Plaintiff's final contentions relate to the trial court's assessment of damages. He maintains that an agency relationship existed between him and defendant and also that defendant's contract with GTA was collateral to defendant's contract with plaintiff. In either event, he argues, no award of damages could be based on defendant's settlement of his obligations to GTA. Both contentions lack merit.

As this court stated in Jurek v. Thompson, *supra,* the two elements necessary to support a finding that an agency relationship existed are (1) a manifestation by plaintiff that defendant be his agent for the resale of the corn and (2) the right of control by plaintiff over defendant with respect to the sale of the corn. The record here is utterly devoid of any evidence to a finding that either element existed.

Plaintiff's arguments against allowing the settlement figure to be used as the basis for assessing damages stands on no sounder footing. Minn. St. 336.2—711(1)[6] expressly provides that a buyer in the place of the defendant may "cover" by

---

[6] Minn. St. 336.2—711(1) provides in part: "Where the seller fails to make delivery or repudiates * * *, the buyer may cancel and whether or not he has done so may in addition to recovering so much of the purchase price as has been paid

(a) 'cover' and have damages under the next section as to all the goods affected whether or not they have been identified to the contract * * *."

purchasing goods in substitution for those due from the seller.[7] The test of proper cover is whether at the time and place of covering the buyer acted in good faith and in a reasonable manner. See, 21A M. S. A., p. 692, Uniform Commercial Code Comments to Minn. St. 336.2—712. Strictly viewed, defendant's actions to settle his corn delivery commitments to GTA were not a "cover," but those settlements did represent the difference between the cost of cover and the contract price and are reasonable under Minn. St. 336.2—712(2), which provides:

"The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (section 336.2—715), but less expenses saved in consequence of the seller's breach."

That exactly describes the remedy sought by defendant and awarded by the trial court. No error is found.

The trial court's findings of fact, conclusions of law, and order for judgment are supported by the evidence and accord with the applicable law. They are, therefore, affirmed.

Affirmed.

---

[7] Minn. St. 336.2—712(1) provides: "After a breach within the preceding section the buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller."