Kathryn **BONDY, et al., Appellants,**

v.

Carey **ALLEN, et al., Respondents,**

**Gold Cross Ambulance Service, Inc., Respondent.**

No. C0–01–28.

Court of Appeals of Minnesota.

Oct. 23, 2001.

Robert G. Benner, Michael B. Goodman, Joseph M. Guzinski, Goodman, Guzinski & Benner, P.A., Rochester, MN, for appellants.

Thomas S. Fraser, Kathleen M. Miller, Robin L. Preble, Trudi Noel Trysla (of counsel), Fredrikson & Byron, P.A., Minneapolis, MN, for respondent Gold Cross Ambulance Service, Inc.

Steven J. Hovey, Hoversten Johnson Beckmann Wellmann & Hovey, Austin, MN, for respondents Carey and Jeffrey Allen.

Considered and decided by STONEBURNER, Presiding Judge, HANSON, Judge, and LINDBERG, Judge.

## OPINION

LINDBERG, Judge.*

Appellant Kathryn Bondy and her husband, John, sued an ambulance service that transported her to a Rochester hospital after she was struck by a car. The district court granted summary judgment in favor of the ambulance service. Appellants argue that their expert testimony established a genuine issue of material fact as to causation. We affirm.

## FACTS

Appellant Kathryn Bondy (Bondy) was a pedestrian in a designated crosswalk when a vehicle traveling 30 to 40 miles per hour struck her in November 1994. The vehicle

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

was owned by respondent Jeffrey Allen and driven by respondent Carey Allen. Bondy sustained multiple injuries, particularly to her left hip and pelvis.

Respondent Gold Cross Ambulance Service, Inc., was called to the accident scene to transport Bondy to the emergency room. At the accident scene, Gold Cross paramedic Kenneth Schweim assessed Bondy's physical condition and concluded she was alert and oriented to her surroundings. Schweim checked her airway, breathing, and circulation and did not observe any distortion of her limbs. He then palpated her lower torso because he knew that was a fragile area, which may have been injured. Bondy did not indicate that she experienced pain during the palpations. Bondy was rolled onto her side, placed on a backboard, and secured with safety straps. The backboard was then secured to a gurney with additional safety straps across Bondy and placed in the ambulance. Bondy's husband, John, traveled in the front of the ambulance.

In the ambulance during transport, Schweim continued to assess and treat Bondy by placing electrodes on her, monitoring her heart, administering oxygen, and attaching a pulse oximeter. Because Bondy was a multiple trauma patient, Schweim needed to do a secondary assessment to determine the nature and extent of the injuries, direct treatment in the ambulance, and expedite services upon arrival at the emergency room. He unfastened one or two safety straps around Bondy's leg and torso to remove a coat placed on her at the accident scene. Two or three straps remained fastened. At some point thereafter, the movement of the ambulance caused Bondy's left leg to slide off the backboard, allowing her foot to touch the floor below the gurney. Bondy, who had been moaning in the ambulance, screamed at this point.

Schweim immediately returned Bondy's leg to the backboard and gurney, refastened the lower straps he had previously removed, and continued the examination and treatment. When the ambulance arrived at the hospital, Bondy was turned over to the hospital's care.

The Bondys sued (1) Carey and Jeffrey Allen; (2) the City of Rochester; and (3) Gold Cross Ambulance Service. The Bondys settled with the city before the scheduled trial date. Their claims against Gold Cross for negligent training and driving were also dismissed. Gold Cross moved for summary judgment on the negligence claim for allowing Bondy's leg to slide off the gurney, arguing there was inadequate proof that the "gurney incident" caused any compensable damage. The district court initially denied summary judgment.

The Bondys and Gold Cross made several motions in limine. The district court rejected the Bondys' motion to hold Gold Cross to the standard of care applicable to common carriers, ruling that Gold Cross is subject to the standard of care applicable to professionals. The court also rejected the Bondys' motion to hold Gold Cross jointly and severally liable with Carey Allen for all of Bondy's injuries under the single-indivisible-injury rule.

The case was set for trial in November 2000. After the jury was selected and opening statements were given, the Bondys and the Allens settled. The Allens agreed to pay their insurance policy limits and Carey Allen admitted liability for striking Bondy. Gold Cross then moved to exclude all evidence relating to damage caused by Carey Allen, arguing that evidence should be limited to damage allegedly caused by Gold Cross. The district court did not rule on this motion. Instead, the court reconsidered sua sponte its earlier denial of Gold Cross's motion for summary judgment and granted summary

judgment against the Bondys. This appeal follows.

## ISSUES

I. Did Dr. Davis's testimony present a material question of fact, thereby precluding the granting of summary judgment against the Bondys?

II. Do appellants' other issues entitle them to relief?

## ANALYSIS

I. *Summary Judgment*

The Bondys argue that the district court improperly granted summary judgment in favor of Gold Cross. They assert that the district court

usurped the role of the jury by making improper findings of material facts and determining issues of credibility when it determined that Dr. Michael Davis['s] testimony, at best, supports de minimis damages for additional blood transfusions and past temporary pain * * * and was speculative and lacked foundation to support a verdict against Gold Cross for aggravation of pre-existing injuries.

They contend that Dr. Davis's testimony established a question of fact as to causation, and that question should have been submitted to the jury, rather than being determined by the court.

An appellate court reviewing a grant of summary judgment asks whether there are any genuine issues of material fact and whether the district court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The reviewing court "must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). To defeat a summary judgment motion, the nonmoving party must demonstrate the existence of specific disputed facts that create a genuine issue of material fact for trial. *Gorath v. Rockwell Int'l, Inc.*, 441 N.W.2d 128, 131 (Minn.App.1989), *review denied* (Minn. July 27, 1989).

A negligence claim requires the plaintiff to show (1) that the defendant had a legal duty, (2) the defendant breached that duty, (3) that the plaintiff suffered an injury, and (4) the breach of the duty was the proximate cause of plaintiff's injury. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982). Negligence claims involve questions of fact and are generally not susceptible to summary adjudication. *Ill. Farmers Ins. Co. v. Tapemark Co.*, 273 N.W.2d 630, 633–34 (Minn.1978). Further, issues of causation also involve questions of fact and "seldom can be disposed of on a motion for summary judgment." *Moe v. Springfield Milling Corp.*, 394 N.W.2d 582, 585 (Minn.App.1986) (quotation omitted), *review denied* (Minn. Dec. 17, 1986).

The Minnesota Supreme Court has stated, however, that

the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].

*DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn.1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). Further,

when the nonmoving party bears the burden of proof on an element essential to the nonmoving party's case, the nonmoving party must make a showing sufficient to establish that essential element.

*Id.*

Here, when Dr. Davis was asked specifically about what harm the gurney

incident did to Bondy, his answers were inconclusive and insufficient to support the Bondys' claim. When asked "whether the percentage of disability to [Bondy's] left lower extremity would be any different" if the gurney incident had never occurred, he answered, "I cannot absolutely be sure about that." The same answer followed a question about her right lower extremity. He could not identify any surgeries that would not have been required but for the gurney incident. He testified that the only medical treatment Bondy would not have received, but for the gurney incident, was that "she would have required less [blood by] transfusions." However, he could not say how much less she would have needed, nor is there any evidence that Bondy's damages are related to the amount of blood she received.

Dr. Davis's testimony does not support the Bondys' assertion of negligence against Gold Cross. He was unable to ascribe any of the claimed harm to Bondy's hip, leg, or lower extremities—beyond an unspecified increase in blood transfusions to the gurney incident in the ambulance. At best, Davis's testimony would support de minimis damages; it was clearly insufficient to support a finding of negligence by Gold Cross. The district court did not err when it concluded that the testimony was speculative and lacked foundation "to support a verdict against Gold Cross for aggravation of pre-existing injuries." We affirm the district court's grant of summary judgment.

## II. *Appellants' Other Issues*

### a. Single–Indivisible–Injury Rule

The Bondys also argue that the Allens and Gold Cross are joint tortfeasors and that the district court erred in determining that they are not subject to the single-indivisible-injury rule. They contend that because the injuries Bondy suffered are not clearly susceptible to apportionment between the initial accident and the gurney incident, they should be subject to the single-indivisible-injury rule. The Bondys assert that Gold Cross and the Allens are jointly and severally liable, unless Gold Cross and the Allens can clearly establish which damages resulted solely from their respective actions. The Bondys argue that the district court improperly placed the burden of apportioning the injuries on them.

▮▮▮ Whether parties are subject to the single-indivisible-injury rule (SII rule) is a question of law. *Can. by Landy v. McCarthy*, 567 N.W.2d 496, 507–08 (Minn. 1997) (stating whether injury is capable of apportionment is a question of law). An appellate court is not bound by, and need not give deference to, the district court's decision on a question of law. *Frost-Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Also, court rulings on mixed questions of law and fact are not binding on an appellate court and are subject to independent review. *Meyering v. Wessels*, 383 N.W.2d 670, 672 (Minn.1986).

▮▮▮ Joint and several liability is imposed under the SII rule when "two or more persons acting independently cause harm to a third person through consecutive acts of negligence closely related in point of time." *Landy*, 567 N.W.2d at 507. The harm must be incapable of division. *Id.*

> [U]nless the damage caused by each is clearly separable, permitting the distinct assignment of responsibility to each, each is liable for the entire damage. The degree of culpability is immaterial.

*Mathews v. Mills*, 288 Minn. 16, 21, 178 N.W.2d 841, 844 (1970) (emphasis omitted) (citations omitted). *Landy* involved a child who suffered lead poisoning, as a

result of exposure over a period of time at two different apartments and *Mathews* involved a multiple-car accident. *Landy,* 567 N.W.2d at 498; *Mathews,* 288 Minn. at 18, 178 N.W.2d at 842. This case is not factually similar to these or other cases applying the SII rule.

No Minnesota case has applied the SII rule to hold a medical defendant jointly and severally liable with the tortfeasor who caused the original injury for which treatment was provided. Restatement (Second) of Torts § 433A cmt. c (1965) states that an original tortfeasor may be liable not only for harm he inflicted, but also for "additional damages resulting from the negligent treatment of the injury by a physician." But a physician providing treatment may be liable only for *additional harm* caused by negligent treatment. *Id.* The Restatement groups physicians and other medical personnel together when addressing the distinct liability of the original tortfeasor for additional harm resulting from efforts of third parties rendering aid to an injured person. *Id.* § 457 cmts. a, b, c.

Minnesota and other jurisdictions have held that a negligent medical defendant in a situation similar to this one is a subsequent tortfeasor who can be held liable only for aggravating the original injury. *See Couillard v. Charles T. Miller Hosp., Inc.,* 253 Minn. 418, 427, 92 N.W.2d 96, 102 (1958) (finding doctor was subsequent tortfeasor, rather than joint tortfeasor, where doctor misdiagnosed a fractured vertebra after a fall on public bus); *see also U.S. Lines, Inc. v. United States,* 470 F.2d 487, 491 (5th Cir.1972) (stating tortfeasor and physician subsequently aggravating injury are not joint tortfeasors and physician not liable to original tortfeasor under any theory of contribution); *Stuart v. Hertz Corp.,* 351 So.2d 703, 705 (Fla.1977) (stating original tortfeasor and doctor aggravating injury not joint tortfeasors, but distinct and independent tortfeasors).

■■■ In effect, Bondy's injuries from the accident constituted a pre-existing condition when the ambulance was called to the scene. The Allens and Gold Cross were, at best, successive tortfeasors. To hold Gold Cross liable for injuries that occurred before the ambulance arrived on the scene would have a chilling effect on the provision of emergency care and is simply inconsistent with existing caselaw.

b. Common Carrier

Relying on cases from other jurisdictions, the Bondys argue that Gold Cross is a common carrier and, therefore, strictly liable for injuries suffered during transport. *See, e.g., Bricks v. Metro Ambulance Serv., Inc.,* 177 Ga.App. 62, 338 S.E.2d 438, 442 (1985) (stating ambulance service was common carrier and absolutely liable for injury incurred during transport, except for acts "of God or public enemies"). The Bondys argue that the district court erred in determining that they were required to establish a breach of the duty of care applicable to medical professionals.

■■■ As recently stated by this court, determination of the proper

> standard of care presents a question of law because it defines a legal obligation to be determined only by the court and from which the jury may not deviate.

*Blatz v. Allina Health Sys.,* 622 N.W.2d 376, 383–84 (Minn.App.2001) (citation omitted). A reviewing court is not bound by and need not give deference to a district court's decision on a purely legal issue. *Frost–Benco,* 358 N.W.2d at 642.

Ambulances do not require a motor carrier certificate or permit. Minn.Stat. § 221.025(4) (2000). In fact, ambulance services are regulated by the Minnesota

Department of Health and the Emergency Medical Services Regulatory Board (the board). Minn.Stat. §§ 144E.001, subds. 2, 3; .01 (2000). Persons operating ambulance services must be licensed by the board. Minn.Stat. § 144E.10, subd. 1 (2000). In addition, ambulance service personnel are required to have special training and certification as an emergency medical technician (EMT), EMT–I, or EMT–P, to be a registered nurse who is also an EMT, or to be a registered physician assistant who is also an EMT. Minn. Stat. § 144E.001, subds. 3a, 5c (2000).

In *Blatz,* this court discussed the services provided by ambulance personnel, noting that some services require medical expertise, while others do not. *Blatz,* 622 N.W.2d at 384. When a paramedic "furnish[es] medical treatment to a patient, a medical or professional standard of care should apply." *Id.* at 385. However, when a paramedic is performing "functions not requiring professional training or judgment, [such as locating an address,] then a heightened standard of professional care is not required." *Id.* In *Blatz,* the court determined that ambulance personnel were performing a non-medical function when they had trouble locating the correct address, which caused a two to five minute delay. *Id.* We concluded that Allina Health System was therefore subject to a reasonable-person standard of care, rather than to a standard of care applicable to medical professionals. *Id.*

Schweim was a licensed paramedic who assessed and treated Bondy in the ambulance, by placing electrodes, monitoring heart rate, administering oxygen, and attaching a pulse oximeter. Schweim was conducting a secondary assessment to determine Bondy's immediate needs and to expedite services upon arrival at the emergency room. He had received specialized training on how to remove clothing and to move injured patients. The tasks in which he was engaged are not those commonly performed by lay people, but tasks performed by specially trained medical personnel, and *Blatz* is clearly distinguishable. Schweim was performing functions requiring medical training, and the district court did not err in holding that the standard of care applicable to common carriers was not the correct standard to be applied in this case.

**DECISION**

Dr. Davis's testimony was not sufficient to establish a question of material fact precluding summary judgment. The district court did not err in rejecting the Bondys' arguments regarding the single-indivisible-injury rule and the standard of care applicable to common carriers.

**Affirmed.**