**Marcus Robert URBAN, a minor, et al., by and through their parent and natural guardian, Todd Michael URBAN, and Todd Michael Urban, individually, Appellants,**

v.

**AMERICAN LEGION POST 184, et al., Defendants,**

**The American Legion Department of Minnesota, Respondent,**

**The American Legion and its Subdivisions, Respondent.**

No. A04–1409.

Court of Appeals of Minnesota.

April 26, 2005.

Leo F. Feeney, Richard L. Gill, Randall M. Tietjen, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, MN, for appellants.

William M. Hart, Melissa Dosick Riethof, Meagher & Geer, P.L.L.P., Minneapolis, MN, for respondent The American Legion Department of Minnesota.

Daniel A. Haws, Thomas A. Gilligan, Jr., Murnane, Conlin, White & Brandt, P.A., St. Paul, MN, for respondent The American Legion and its Subdivisions.

Considered and decided by HALBROOKS, Presiding Judge; SCHUMACHER, Judge; and DIETZEN, Judge.

## OPINION

HALBROOKS, Judge.

Appellant Todd Urban, on behalf of himself and his three minor children, challenges the district court's award of summary judgment on claims brought under Minnesota's Civil Damages Act against respondents American Legion and American Legion Department of Minnesota. Appellants also challenge the district court's issuance of protective orders that ended discovery in this matter. On appeal, American Legion and American Legion Department of Minnesota move to strike portions of the appendix to appellants' brief. Respondent American Legion Post 184 is not a party in this appeal. Because we conclude that the Civil Damages Act does not provide for a cause of action against American Legion or American Legion Department of Minnesota, we affirm the district court's summary judgment. Because the district court did not abuse its discretion, we affirm the district court's issuance of the discovery protective orders. We further grant respondents' motion to strike portions of appellants' appendix as outside the record on appeal.

## FACTS

Appellant Todd Urban, on behalf of himself and his three minor children, commenced an action against American Legion Post 184 (Post 184) under Minnesota's Civil Damages Act (the Act). On August 10, 2004, Todd and Barbara Ann Urban and their three children were driving on Highway 52 in Pine Island when their car was

hit by a vehicle driven by Orvin Roland. As a result of the accident, Barbara Ann died, one child sustained permanent physical disabilities, and another child suffered permanent brain damage. Appellants allege that Roland was intoxicated at the time of the accident and that Post 184 caused his intoxication by illegally selling alcohol to him. Appellants subsequently brought claims under the Act against American Legion (National) and American Legion Department of Minnesota (Department), contending that these entities are vicariously liable for Post 184's illegal alcohol sale.

National, Department, and Post 184 are separately incorporated entities. The U.S. Congress chartered National in 1919 and authorized it to establish regional and local organizations. National issued charters to both Department and Post 184. Thereafter, both Department and Post 184 separately incorporated in Minnesota.

According to the "Officer's Guide," which is published by National, the local post "is the combat unit of The American Legion" and "is to a large degree autonomous, restricted only by broad general guidelines carried in the National or Department Constitution and By–Laws." National promulgates recommendations for forming local posts, conducting ceremonies and post meetings, writing post constitutions and bylaws, and using the American Legion's name and emblems. In part, materials published by National explain that a local post typically "will be unable to remain solvent if its princip[al] source of income is derived from membership dues." National lists "operation of club rooms and dining facilities for [the local post's] members" as one of three sources of possible supplementary sources of income. The "Post Operations Manual" lists a number of standards of operation, including, "If the post's activity center includes a bar, it should always be closed during post meetings. There is no exception to this flat rule. Keep the bar closed during meetings and, obviously, do not permit beverages of any kind to be served or drunk during the meeting."

National also provides posts with legal advice. For example, the record shows that National has advised local posts to incorporate to protect individual members from liability in dram-shop litigation. National has also advised local posts for tax purposes to obtain club licenses and to serve alcohol only to members.

National has the power to revoke a local post's charter. Revocation generally occurs due to low membership or the failure of a post to transmit dues owed to National and Department. Revocation can also occur due to misconduct. In at least one instance, a local post's charter was cancelled because "[it] was a completely illegal post," "[b]eing operated as a for[-]profit club," and had been paying fines imposed by the "State Liquor control [board]." Finally, National has the authority to audit or investigate a post's membership rosters and financial statements.

According to the affidavit of Lyle Foltz, Department Adjutant, Department provides communication between local posts and National, guidance and leadership, and the administration of programs that local posts may choose to participate in, but "has no day-to-day control over Post 184 or any other post." According to a letter from Lee P. Harris, Deputy Director, National Public Relations, the "Department Adjutant" is "responsible for the daily business operation of the elements of the organization in the state."

Post 184, located in Pine Island, has about 270 members. It collects dues from its members and transmits a portion to National and Department as required under its constitution. In addition to collect-

ing dues, Post 184 raises 94% of its revenue through the operation of a private club and alcohol sales. Post 184 uses revenue from the club to satisfy membership dues on behalf of members who are unable to pay.

■ National and Department filed motions for summary judgment, arguing that the Act does not provide a cause of action against them and requested protective orders to stop discovery. The district court granted the requests for summary judgment, concluding that National and Department could not be sued under the Act because neither is a commercial vendor of alcohol or holder of a liquor license. The district court further concluded that even if National or Department could be sued under the Act, appellants failed to raise a genuine issue of material fact on the theory of vicarious liability and failed to provide notice to those entities as required by the Act. The district court also granted National and Department's motions for discovery protective orders. Appellants argue that the district court erred because (1) the Civil Damages Act applies to entities that are vicariously liable, (2) genuine issues of material fact exist regarding vicarious liability, (3) appellants complied with the Civil Damages Act's notice requirement, and (4) the district court abused its discretion by granting a protective order to stop all discovery against National and Department.[1]

## ISSUES

I. Did the district court err by granting summary judgment on claims brought under the Act against National and Department?

II. Did the district court abuse its discretion by granting National and Department's motions for discovery protective orders?

## ANALYSIS

### I.

A. Appellants challenge the district court's grant of summary judgment, contending that a claim may be brought under the Act against an entity that is vicariously liable for another entity's illegal sale of alcohol. The district court concluded that the Act does not provide for a claim against an entity that is not a commercial vendor of alcohol or holder of a liquor license. We agree.

On appeal from summary judgment, appellate courts review the record to determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Schulte v. Corner Club Bar,* 544 N.W.2d 486, 488 (Minn.1996). When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion, reviewed de novo by appellate courts. *Lefto v. Hoggsbreath Enters., Inc.,* 581 N.W.2d 855, 856 (Minn.1998). Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998).

---

1. National and Department moved to strike two depositions and an affidavit included in the appendix to appellants' brief. The contested documents were filed with the district court after the May 7, 2004 hearing on summary judgment. There is no indication from the district court that it considered these documents in making its summary-judgment determination. We have limited our review to the papers actually considered by the district court in making its summary-judgment determination. *See Cressy v. Grassmann,* 536 N.W.2d 39, 43 (Minn.App.1995) (stating that the court "will grant a motion to strike material submitted in a party's appendix when that material did not come before the trial court"), *review denied* (Minn. Sept. 28, 1995). The motion to strike is granted.

The objective of all statutory interpretation is to ascertain and effectuate the intent of the legislature. Minn.Stat. § 645.16 (2004). Pursuant to canons of statutory construction, words and phrases should be construed according to rules of grammar and according to their common and approved usage, unless doing so would be inconsistent with the intent of the legislature. Minn.Stat. § 645.08(1) (2004). In determining legislative intent, we presume that the legislature acts with full knowledge of existing caselaw. *Minneapolis E. Ry. v. City of Minneapolis,* 247 Minn. 413, 418, 77 N.W.2d 425, 428 (1956).

The Act provides a cause of action against "a person who caused the [tortfeasor's] intoxication ... by illegally selling alcoholic beverages." Minn.Stat. § 340A.801, subd. 1 (2004). Prior to the Act, there was no liability at common law for injuries caused by illegal sale of alcohol. *Koehnen v. Dufuor,* 590 N.W.2d 107, 109 (Minn.1999). Because the Act is a statutory creation, enacted in derogation of the common law, it must be strictly construed. *Whitener v. Dahl,* 625 N.W.2d 827, 833 (Minn.2001).

In determining whether a claim under the Act could be brought against a social host of a party, the Minnesota Supreme Court has held that liability under the Act only applies to persons "in the business of providing liquor, and not a social host." *Cady v. Coleman,* 315 N.W.2d 593, 596 (Minn.1982). Seventeen years later, in another case involving a social host, the supreme court noted that since *Cady* the legislature had recodified the Act and "*left untouched* the sweeping holding of ... *Cady* that only persons in the business of providing liquor are covered by the Act." *Koehnen,* 590 N.W.2d at 111. The supreme court further noted:

> This court's holding in *Cady* in 1982 clearly and unequivocally limited application of the Act to commercial vendors, and despite a recodification of the Act in 1984, a restatement in 1985 and an additional amendment in 1990, the *Cady* holding remains unchanged. Fundamental logic leads to the undeniable conclusion that *Cady* expresses the will of the legislature and legislative rules of construction so provide.

*Id.* at 112.

▉ We conclude that, based on legislative intent as previously determined by the Minnesota Supreme Court in *Koehnen,* the Act provides for a cause of action only against persons who are in the business of providing liquor. This comports with our rule that statutes in derogation of the common law shall be strictly construed. Additionally, this conclusion is consistent with the plain language of the statute, which provides for a cause of action against persons that cause the tortfeasor's intoxication by "illegally selling alcoholic beverages."

▉ It is undisputed that National, Department, and Post 184 are separately incorporated entities. Additionally, it is undisputed that neither National nor Department is the holder of any license that allows it to sell liquor in Minnesota and neither owns a private club or bar in the state. In contrast, Post 184 is in the business of selling alcohol—it manages a private club and is the holder of a club license that, under Minn.Stat. § 340A.404, subd. 1(4) (2004), allows it to sell liquor to club members.

Because neither National or Department is in the business of providing liquor, the Act does not provide for a cause of action against either entity. Therefore, the district court did not err in granting National and Department's motions for summary judgment.

B.   As an alternative argument, appellants contend that even though neither National nor Department is the holder of a liquor license or owner of a private club or bar—and thus not directly in the business of providing liquor—a claim against both parties may be brought under the Act because National and Department are vicariously liable for Post 184's illegal alcohol sale. The district court concluded that even if a claim may be brought under the Act against an entity that is not in the business of providing liquor but that is nevertheless vicariously liable for an entity in that business, appellants failed to raise a genuine issue of material fact on the essential elements necessary for a finding of vicarious liability. Appellants contend that genuine issues of material fact exist regarding whether National and Department have a relationship with Post 184 that gives rise to vicarious liability on two theories: (1) respondeat superior and (2) alter ego. Before the district court, appellants also argued vicarious liability on the theories of joint venture and joint enterprise, but they have not raised those theories on appeal.

First, appellants argue that genuine issues of material fact exist regarding National and Department's liability for the acts of Post 184 under the doctrine of respondeat superior. Vicarious liability may be imposed when a master-servant or principal-agent relationship exists between the tortfeasor and a third party. *Nadeau v. Melin*, 260 Minn. 369, 376, 110 N.W.2d 29, 34 (1961). A principal-agent relationship results "from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." Restatement (Second) of Agency § 1 (2004); *see also Plate v. St. Mary's Help of Christians Church*, 520 N.W.2d 17, 20 (Minn.App.1994) (noting Minnesota courts

have adopted the Restatement definition of agency), *review denied* (Minn. Oct. 14, 1994). A master in a master-servant relationship is one who "employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service." Restatement (Second) of Agency § 2 (2004).

The right to control—and not necessarily the exercise of that right—gives rise to the vicarious liability of a principal or master for the tortious act of his or her agent. *Frankle v. Twedt*, 234 Minn. 42, 47, 47 N.W.2d 482, 487 (1951). "The determinative right of control is not merely over *what* is to be done, but primarily over *how* it is to be done." *Id.* As such, "[d]etailed authoritative control must be distinguished from mere designation of work." *Nepstad v. Lambert*, 235 Minn. 1, 14, 50 N.W.2d 614, 622 (1951). For example, employees are differentiated from independent contractors because although both contract to do something for the principal, independent contractors are "not subject to any control or right of control with respect to their physical conduct in carrying out the undertaking." *Frankle*, 234 Minn. at 47–48, 47 N.W.2d at 487. As such, principals are generally not vicariously liable for the acts of independent contractors. *Id.*

The record establishes that National has the power to cancel Post 184's charter for lack of membership, failure to pay dues, or "misconduct." National may require an audit of Post 184's financial affairs, including the financial affairs of Post 184's private club. National also promulgates recommendations for local posts regarding how to run meetings, the use of emblems, and the writing of constitutions and bylaws, and provides legal advice to local posts.

With regard to the relationship between Department and Post 184, the "Department Adjutant" is "responsible for the daily business operation of the elements of the organization in the state." According to the affidavit of Lyle Foltz, Minnesota's Department Adjutant, he provides communication between local posts and National, guidance and leadership, and the administration of programs that local posts may choose to participate in. But Department "has no day-to-day control over Post 184 or any other post."

Considering the evidence in the light most favorable to appellants, there is no genuine issue of material fact on the element of control, which is essential to proving that either National or Department is vicariously liable for the acts of Post 184. The record does not show that National has a right to control the physical undertakings of Post 184's daily activities. At most, the record shows that National has some power over what Post 184 does, but not over how it does it.

With regard to Department, it could be argued that at least one description of the role of Department Adjudicate suggests the power to control the daily activities of Post 184. But Foltz's affidavit suggests otherwise. To defeat a motion for summary judgment, a plaintiff must produce sufficient evidence to show a genuine issue of material fact as to each element of the claim. *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 410–11 (Minn.1994). A mere "scintilla of evidence" that may support the non-moving party's position is not sufficient. *Bondy v. Allen*, 635 N.W.2d 244, 248 (Minn.App.2001) (quotation omitted).

Second, appellants argue that genuine issues of material fact exist regarding National and Department's liability for the acts of Post 184 under the doctrine of alter ego. Generally, a parent corporation cannot be held liable for the wrongdoing of a subsidiary without a showing of improper conduct, fraud, or bad faith. *Assoc. of Mill & Elevator Mut. Ins. Co. v. Barzen Int'l*, 553 N.W.2d 446, 449 (Minn.App.1996), *review denied* (Minn. Nov. 20, 1996). For purposes of disregarding the corporate structure to hold one corporation liable for another's wrongdoing, this court has adopted a two-part test for piercing the corporate veil, established in *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509 (Minn.1979). *Barzen*, 553 N.W.2d at 449.

The first prong of the test requires that "a number of" the following factors must exist to hold a parent corporation liable for the wrongdoing of a subsidiary: (1) insufficient capitalization, (2) failure to observe corporate formalities, (3) nonpayment of dividends, (4) insolvency of debtor corporation, (5) siphoning of funds, (6) nonfunctioning of officers and directors, (7) absence of corporate records, or (8) existence of corporation as a merely façade for individual dealings. *Barzen*, 553 N.W.2d at 449–50 (citing *Victoria Elevator*, 283 N.W.2d at 512).

Appellants contend that this prong has been met because the existence of local posts is merely a façade for the dealings of National and Department. But appellants have not supported this assertion with a showing that Post 184 and National or Department commingle their finances or that National or Department improperly raid or use the funds of Post 184. *Cf. Chergosky v. Crosstown Bell, Inc.*, 454 N.W.2d 654, 658 (Minn.App.1990) (piercing corporate veil when shareholder did not maintain a separate corporate checking account and placed all corporate funds in his personal checking account), *review denied* (Minn. June 15, 1990). Additionally, appellants have not provided evidence of insufficient capitalization, failure to observe

corporate formalities, insolvency, nonfunctioning of officers and directors, or the absence of corporate records. *Cf. Barzen,* 553 N.W.2d at 449–50 (concluding that a parent corporation could not be held liable for a subsidiary where the subsidiary was sufficiently capitalized, observed corporate formalities, and kept its own corporate records).

■■■ The second prong of the two-part test requires a finding of injustice or fundamental unfairness. *Barzen,* 553 N.W.2d at 450 (citing *Victoria Elevator,* 283 N.W.2d at 512). "Doing business in a corporate form in order to limit individual liability is not wrong; it is, in fact, one purpose for incorporating." *Victoria Elevator,* 283 N.W.2d at 512. It is in circumstances where the "formalities of corporate existence are disregarded by one seeking to use it" that the corporate existence cannot be allowed to shield the individual from liability. *Id.*

Appellants contend that National and Department should be liable for the wrongdoing of local posts because (1) bar operations are necessary for the financial solvency of the entire operation, (2) National and Department encourage local posts to operate bars, and (3) both organizations have the power to exercise control over posts' bar operations. Appellants argue that since National and Department receive the financial benefit of the bar operations it would be unjust to allow them to escape liability that arises from them. We disagree.

Although appellants have shown that Post 184, Department, and National have a relationship where the financial stability of one entity is related to the financial stability of others, they have not shown that these entities have disregarded the formalities of being separately incorporated. As such, they should not be denied the benefit of limiting individual liability by doing

business as separately incorporated entities. To defeat summary judgment, appellants needed to raise a genuine issue of material fact on both elements of the alter-ego claim, but failed to do so. Because the district court did not err in awarding summary judgment, we do not reach the issue of whether appellants were required under the Act to give notice to either National or Department.

## II.

■■■ Appellants argue that the district court abused its discretion when it granted National and Department protective orders, which effectively stayed discovery until after the motions for summary judgment were decided. Absent a clear abuse of discretion, a district court's decision regarding discovery, including granting protective orders, will not be disturbed by a reviewing court. *WDSI, Inc. v. County of Steele,* 672 N.W.2d 617, 622 (Minn.App.2003).

At the time the protective orders were issued, there was ample evidence in the record for the district court to properly analyze respondents' motions for summary judgment, and the district court had already held a hearing on the motions. Disallowing further discovery, which could have been unnecessary and intrusive, depending on the district court's summary-judgment rulings, did not amount to an abuse of the district court's discretion. *See* Minn. R. Civ. P. 26.03 (stating that "[u]pon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense").

## DECISION

Because the Act gives rise to a cause of action in derogation of the common law it

must be strictly construed, providing for claims only against persons who are in the business of providing liquor, the district court did not err in awarding summary judgment to National and Department. Further, appellants did not raise a genuine issue of material fact concerning the elements necessary to support the theory of vicarious liability. Finally, we conclude that the district court did not abuse its discretion by issuing discovery protective orders.

**Affirmed; motion granted.**

ROBERT H. SCHUMACHER, Judge (dissenting).

I respectfully dissent. I believe (1) Minnesota's Civil Damages Act (the Act) provides for a cause of action against National or Department, (2) appellants raised genuine issues of material fact on the issue of vicarious liability, and (3) appellants complied with the Act's notice requirement.

1. The district court concluded, as does the majority opinion, that the Act does not provide for a cause of action against National or Department because neither is in the business of selling liquor. But the cases cited in support of this position, including *Koehnen v. Dufuor*, 590 N.W.2d 107, 109 (Minn.1999), are clearly distinguishable as those cases deal with the issue of social hosts, not the issue of vicarious liability.

Vicarious liability describes a relationship wherein liability is imputed to a principal for the tortious conduct of its agent. *See Nadeau v. Melin*, 260 Minn. 369, 376–77, 110 N.W.2d 29, 34–35 (1961) (describing imputed liability as arising from relationship between master and servant or principal and agent). In the context of the Act, vicarious liability directs attention to all parties that "caused the intoxication," including the agent and the principal to whom liability is imputed. *See* Minn.Stat. § 340A.801, subd. 1 (2004) (providing cause of action "against a person who caused the intoxication ... by illegally selling alcoholic beverages"). A party who is not "directly" in the business of providing liquor, but whose agent is in such a business on the principal's behalf, falls within the Act's meaning. *See In re Estate of Kroyer*, 385 N.W.2d 31, 33 (Minn.App. 1986) (explaining courts presume consistency with common law; a statute is not to be construed in derogation of well-established principles of common-law unless expressly required) (citing *Swogger v. Taylor*, 243 Minn. 458, 465, 68 N.W.2d 376, 382 (1955)).

Additionally, as much as the Act is an abrogation of common law, it is also a remedial statute and should be given liberal construction to accomplish its purpose. *Beck v. Groe*, 245 Minn. 28, 34, 70 N.W.2d 886, 891 (1955). The purpose of the Act is to suppress social ills that result from intoxication by providing incentive for those that profit from providing liquor to do everything in their power to avoid making illegal sales. *Hollerich v. City of Good Thunder*, 340 N.W.2d 665, 668 (Minn.1983); *Carlson v. Thompson*, 615 N.W.2d 387, 389 (Minn.App.2000), *review denied* (Minn. Oct. 17, 2000). This purpose is clearly defeated by allowing an organization to proceed with carefree liquor sales by holding significant assets in a separately incorporated entity, one that is not "directly" providing liquor but nevertheless profits from such provisions.

The district court's order should be reversed since it misconstrues the Act's meaning and fails to suppress its intended mischief. I note that under a similar act, Michigan's courts have arrived at the same conclusion. *See Kerry v. Turnage*, 154 Mich.App. 275, 397 N.W.2d 543, 545, (1986) (holding school district could be held vicar-

iously liable for actions of athletic booster organization, which was district's agent and illegally sold liquor), *review denied* (Mich. Jan. 27, 2987).

2. The existence of an agency relationship is a question of fact, *PMH Props. v. Nichols,* 263 N.W.2d 799, 802 (Minn.1978), and should be decided by the jury unless the evidence is conclusive. *Duluth Superior Erection, Inc. v. Concrete Restorers, Inc.,* 665 N.W.2d 528, 534 (Minn.App.2003). Two elements must be satisfied to support a finding of an agency relationship, including a manifestation by the principal that an agent act for the principal and the right of control by the principal over the agent. *Teeman v. Jurek,* 312 Minn. 292, 299, 251 N.W.2d 698, 702 (1977). The majority concluded that appellants failed to raise a genuine issue of material fact on the second element. I disagree.

The record reveals that National has the power to cancel a post's charter for misconduct. In at least one instance, a charter was cancelled in part due to a post's illegal sale of liquor. National also promulgates rules regulating posts' management of bar operations. According to the Post Operations Manual, "If the post's activity center includes a bar, it should always be closed during post meetings. There is no exception to this flat rule." As for Department, the record shows the Department Adjutant is "responsible for the daily business operation of the elements of the organization in the state."

Taken in the light most favorable to appellants, this record demonstrates that both National and Department have the right to control the daily operation of Post 184's private club and liquor sales. Such a right gives rise to the vicarious liability of National and Department for the tortious acts of Post 184. *See Frankle v. Twedt,* 234 Minn. 42, 45–47, 47 N.W.2d 482, 486–

87 (Minn.1951) (stating right to control gives rise to vicarious liability). The district court erred in determining that appellants failed to raise a genuine issue of material fact on the issue of vicarious liability.

3. Minn.Stat. § 340A.802, subds. 1, 2 (2004), requires that persons claiming damages "from a licensed retailer of alcoholic beverages or municipal liquor store ... give written notice to the licensee or municipality" within 240 days of the date of entering an attorney-client relationship. The district court concluded a claim under the Act against National or Department was precluded by appellants' failure to give the required notice to these parties. The majority opinion does not reach this issue.

It is undisputed that appellants did not notify either National or Department of their claim within the 240–day time period, although notice was given to Post 184. But it is also undisputed that neither National nor Department is a licensed retailer or municipal liquor store. The statute's plain language only requires that licensed retailers and municipal liquor stores receive the required notice; the Act does not require that notice be given to all potential defendants. *See Olson v. Blaeser,* 458 N.W.2d 113, 119 (Minn.App.1990) (recognizing Act does not require notice be given to all potential defendants).

Summary judgment in this matter was premature. Appellants should be allowed to proceed with their claims against National and Department.