The WORK CONNECTION,
INC., Relator,

v.

Son Q. BUI, Respondent,

Department of Employment and
Economic Development,
Respondent.

No. A07–0348.

Court of Appeals of Minnesota.

April 8, 2008.

Review Granted June 18, 2008.

M. Gregory Simpson, Siegel, Brill, Greupner, Duffy & Foster, P.A., Minneapolis, MN, for relator.

Son Q. Bui, Brooklyn Park, MN, pro se respondent.

Lee B. Nelson, Katrina Gulstad, Department of Employment and Economic Development, St. Paul, MN, for respondent department.

Considered and decided by KLAPHAKE, Presiding Judge;  MINGE, Judge;  and SCHELLHAS, Judge.

## OPINION

MINGE, Judge.

Relator employer appeals from the award of unemployment-insurance benefits

to respondent employee, arguing that the employee who relies on public transportation is not available for employment throughout the labor market area as required by Minn.Stat. § 268.085, subd. 15(e) (2006). We affirm.

## FACTS

Relator The Work Connection, Inc., is a temporary-staffing service that employed Son Bui from February 2, 2004, to August 29, 2006. Bui worked at Work Connection's client, Technical Resin and Packaging, until he called in sick on August 29, 2006, and his employment was terminated. Two days later, Bui called Work Connection and requested to be placed in a new job.

Bui lives in Brooklyn Park; he does not own a car. He either rode a bicycle or, in inclement weather, used public bus transportation to commute to his job at Technical Resin. That work site was located about four miles from his residence. Both his home and the job were within walking distance of a bus route. The record does not indicate that he had any difficulty getting to work using these methods of transportation for the two years he was employed by Work Connection.

On September 18, Work Connection offered to place Bui in a position at a warehouse in Coon Rapids. The warehouse was six miles from where he lived. Bui asked whether it was accessible from a bus line. He was told that it was not. He asked relatives whether they could give him a ride and was told they could not guarantee him a ride to work every day. Bui declined the job offer because the work was not accessible to a bus line and eventually applied for unemployment benefits.

DEED initially determined that Bui was qualified for benefits. Work Connection contested the award of benefits, arguing that Bui had rejected its offer of suitable employment without "good cause." An unemployment law judge (ULJ) found that because Bui relies on public transportation and the job offered was not on a bus line, Bui had rejected the offer for good cause. Work Connection moved for reconsideration, arguing instead that because Bui relied on public transportation, he was not "available for suitable employment" as required by Minn.Stat. § 268.085, subd. 15(e) (2006), and was therefore ineligible for benefits. The ULJ rejected that argument, noting that

> Bui would have public transportation to a reasonable number of locations in the labor market area. He would be available for employment at any location which is on a bus line. Therefore, it cannot be said that Bui is not available for employment in the labor market area.

This certiorari appeal follows.

## ISSUES

I. Can the court of appeals consider issues that are not addressed by the ULJ in the initial decision but are raised and addressed for the first time on a motion for reconsideration?

II. Did respondent's reliance on public transportation make him ineligible for unemployment benefits because he failed to meet the statutory requirement that he have transportation throughout the labor market area to be considered "available for suitable employment" under Minn.Stat. § 268.085, subd. 15(e) (2006)?

## ANALYSIS

### I.

■ The first issue is whether the argument that Bui is ineligible for benefits because he is not available for work throughout the labor market area as re-

quired by Minn.Stat. § 268.085, subd. 15(e) (2006), can be properly considered on appeal. This is a legal question, which we review de novo. *See Jenkins v. Am. Express Fin. Corp.,* 721 N.W.2d 286, 289 (Minn.2006) (allowing appellate courts to exercise independent judgment when reviewing questions of law).

Respondent Minnesota Department of Employment and Economic Development (DEED) argues that in the initial proceeding before the ULJ, Work Connection claimed that Bui did not have "good cause" to refuse its offer of employment. DEED asserts that Work Connection did not claim, and the ULJ did not consider, whether Bui was ineligible for benefits because of the different requirement of "availability" under Minn.Stat. § 268.085, subd. 15(e), until Work Connection moved for reconsideration. Accordingly, DEED argues that the "availability" argument is not properly before us on appeal.

█ Minn.Stat. § 268.105, subd. 7 (2006), does not specifically indicate how arguments brought before the ULJ on reconsideration, rather than at the initial hearing, should be treated on appeal to this court. On a request for reconsideration, the employer or the employee may comment on perceived factual or legal error in a decision, and the ULJ may modify or affirm the decision. *Id.,* subd. 2(a), (b) (2006). The decision on reconsideration is DEED's final action. *Id.,* subd. 2(f) (2006). It is this final action that is subject to the review of this court. *Id.*

Moreover, when reviewing a ULJ's final decision, this court may

affirm the decision of the unemployment law judge or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are:

(1) in violation of constitutional provisions;

(2) in excess of the statutory authority or jurisdiction of the department;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) unsupported by substantial evidence in view of the entire record as submitted; or

(6) arbitrary or capricious.

*Id.,* subd. 7(d). We note that the introductory language provides for reversal or remand "if the substantial rights of the [relator] may have been prejudiced" based on "error of law," without regard to whether any such error was considered by the ULJ before or after the initial evidentiary hearing. *Id.* This indicates that we may take up issues even if they were first considered by the ULJ after a reconsideration motion. A contrary decision would leave the final decision of the ULJ unreviewable.

In its motion for reconsideration, Work Connection argued that Bui was ineligible for benefits not because he had declined a job offer and did not comply with Minn. Stat. § 268.085, subd. 13c, but because he did not have "transportation throughout the labor market area" as required under the availability requirement of Minn.Stat. § 268.085, subd. 15(e). This argument was not raised at the original hearing. However, in the final reconsideration order, the ULJ ruled that, although he had not considered the availability argument in the initial hearing, Bui was "available for employment" because he had reliable transportation to a reasonable number of locations within the labor market area. It appears that the record was sufficiently developed; there was no request on reconsideration to introduce additional evidence.

Because the ULJ addressed this issue in the final ruling under review on appeal,

and because it appears that the record was sufficiently developed for the ULJ to render a decision, we conclude that Work Connection's argument that Bui was ineligible for benefits because of his unavailability for suitable employment under Minn. Stat. § 268.085, subd. 15(e), is properly before this court.

## II.

█ The second issue is whether Bui was available for employment and thus eligible for unemployment benefits despite his reliance on public transportation. This court reviews a final ULJ decision to determine whether it is affected by an error of law, not supported by substantial evidence, or arbitrary or capricious. Minn. Stat. § 268.105, subd. 7(d)(4)-(6). Questions of law are reviewed de novo. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn.2002). We view the ULJ's findings of fact in the light most favorable to the decision and will not disturb them as long as there is evidence that reasonably tends to sustain those findings. *Id.*

An applicant must be "available for suitable employment" in order to be eligible for unemployment benefits. Minn.Stat. § 268.085, subd. 1(4) (2006). That phrase is defined by law:

> (a) "Available for suitable employment" means an applicant is ready and willing to accept suitable employment in the labor market area. The attachment to the work force must be genuine. An applicant may restrict availability to suitable employment, but there must be no other restrictions, either self-imposed or created by circumstances, temporary or permanent, that prevent accepting suitable employment.
>
> . . . .
>
> (e) An applicant must have transportation throughout the labor market area to be considered "available for suitable employment."

Minn.Stat. § 268.085, subd. 15.[1]

### A. Availability, Good Reason, Good Cause

As a preliminary matter, Work Connection urges that we treat the transportation question in determining availability for work the same as in determining eligibility after rejecting a job offer or quitting a job. However, those are there distinctly different bases for determining eligibility for benefits, and each has its own statutory standard. Whether or not an applicant has "good cause" for rejecting employment requires a finding that the applicant rejected work for a reason that would cause a reasonable individual who wants suitable employment to decline the offer. Minn. Stat. § 268.085, subd. 13c(b) (2006). This finding involves a different standard of inquiry from the one at hand. *See* Minn. Stat. § 268.085, subd. 15(e) (requiring that the applicant be "available for suitable employment"). Likewise, whether an applicant had "good reason" to *quit* employment requires a finding that the applicant terminated his or her employment because of "good reason *caused by the employer.*" Minn.Stat. § 268.095, subd. 1(1) (2006) (emphasis added). Again, there is a different standard.[2]

In support of its argument, Work Connection cites *Hill v. Contract Beverages,*

---

1. Suitable employment is further defined in Minn.Stat. § 268.035, subd. 23a. Although not raised by the parties, that definition states that "the distance of the employment from the applicant's residence shall be considered." *Id.* subd. 23a(a). We note that other portions of the statute at issue, such as the suitability requirement, do not demand absolutely that an applicant accept any proffered job in order to be eligible benefits. Rather, it is an inquiry into the broader factual circumstances of each case.

2. We also note the distinct purposes and operation of the three different statutory standards. The "availability" requirement merely

*Inc.*, 307 Minn. 356, 240 N.W.2d 314 (1976), a supreme court case, and several unpublished decisions of this court that deal with quit and job rejection situations. *Hill* determined that an applicant did not quit for good reason *caused by the employer* when he could no longer arrange transportation to an existing job. *Hill*, 307 Minn. at 358, 240 N.W.2d at 316. Because *Hill* analyzes a different issue and does not address the availability question, the standard it uses should be limited to cases involving a quit. *See Cherry v. Am. Nat'l Ins. Co.*, 426 N.W.2d 475, 477 (Minn.App.1988) (limiting *Hill's* identification of transportation as the responsibility of the employee to cases concerning whether an employee had "good cause" in quitting employment rather than a consideration of whether an employee's failure to provide transportation constituted "misconduct" under the unemployment-insurance statutes). There are no published cases considering the transportation dimension of the requirement that an applicant be "available for suitable employment." We therefore turn to the statutory language in section 268.085, subdivision 15(e).

### B. Ambiguity

When the words of a law are clear and free from all ambiguity, we apply the law according to the plain and ordinary meaning of its terms. Minn.Stat. § 645.16 (2006). Language is ambiguous only if it is capable of more than one reasonable interpretation. *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999); *see also Abrahamson v. Abrahamson*, 613 N.W.2d 418, 421–22 (Minn.App.2000) ("When . . . the words of a statute are not explicit and more than one reasonable interpretation is possible, the statute must be construed.").

The statute states that to be "available" for work, "an applicant must have transportation *throughout* the labor market area." Minn.Stat. § 268.085, subd. 15(e) (emphasis added). The word "throughout" may be used as an adverb or a preposition. *The American Heritage College Dictionary* 1436 (4th ed.2002). As "throughout" is used in Minn.Stat. § 268.085, subd. 15(e), it is a preposition.[3] The dictionary definition of "throughout," used as a preposition, is: "[i]n, to, through, or during every part of; all through." *Id.* In turn, "through" is defined in relevant part as: "Here and there in; around; *a tour through France.*" *Id.* Using these definitions of "throughout" and "through," there are two relevant meanings: (1) all "here and there in" or all "around," or, para-

---

demands that applicants who have lost their employment remain genuine in their willingness to accept new and suitable employment. It provides the lowest statutory bar. The provision requiring that a potential employee have "good cause" to decline employment provides a higher bar: an applicant must show that he or she had good reason to reject the offered job. When an employee quits a position that he already holds, the bar is still higher: applicants must now show that the quit is caused by the employer.

**3.** *See The Chicago Manual of Style* § 5.172 at 187 (15th ed.2003) (stating that when a term is used as a preposition, it takes on an object,

as in "Let's slide *down* the hill;" when used as an adverb, it does not, as in "we sat *down*.").

Work Connection argues that, in this context, "throughout" must mean that an applicant is capable of getting "everywhere" within the labor market area, citing *Webster's New World Dictionary* 1483 (2d Coll. ed.1974) and an online version of *The American Heritage College Dictionary* 1436 (4th ed.2002). In making this argument, Work Connection relies on the dictionary definition of "throughout" in its adverb form, which is "[i]n or through all parts; everywhere." *The American Heritage College Dictionary* 1436 (4th ed.2002). The adverb definition is not appropriate.

phrased more generally, to various locales representative of the whole; or (2) "in . . . every part of," "to . . . every part of," and "through . . . every part of." Thus, in the first meaning, if someone states that she has traveled "throughout" Wisconsin, it does not indicate that she has visited *every* place within the state, but that she has been "all around" the state or, restated, to locations that are representative of its various parts. By contrast, "in," "to," or "through" every part of a particular area would preclude the omission of any "part." The adverb definition appears to emphasize this narrower, more demanding meaning.

Furthermore, we observe that the context in which the word "throughout" appears is important to its meaning. "Throughout" does not appear in splendid isolation. A key phrase in the same sentence is "labor market area," and all of these words are part of the legislative effort to define the phrase "available for suitable employment." Thus, when applying this phrase of the statute to a person claiming benefits, DEED must consider the relevant "labor market area" based on surrounding circumstances. If it is a metropolitan area, there are thousands of places of employment in hundreds of neighborhoods, industrial parks, and other identifiable hubs of activity. There are also discrete, individual locations that are more isolated. The statute does not necessarily require that, to be "available," one must have transportation to every single employment site in an entire metropolitan area. It requires that the applicant for benefits have transportation "throughout" the relevant labor market area. The labor market area may differ depending on the work experience and location of each applicant for benefits. Thus, the relevant labor market is different for a brain surgeon and a common laborer; it is different for an urban and a rural Minnesotan; and it may

be different for ex-urban and inner-city parts of a metropolitan area. As a result, the transportation required to be available throughout the labor market has an inherent ambiguity.

Because the statutory language is subject to more than one interpretation, there is ambiguity, and we look to the purpose of the statute and legislative history to further elucidate the nature of the transportation requirement under Minn.Stat. § 268.085, subd. 15(e).

### C. Statutory Construction

■■■ When the language is ambiguous, the intention of the legislature may be ascertained by considering, among other matters:

(1) the occasion and necessity for the law;

(2) the circumstances under which it was enacted;

(3) the mischief to be remedied;

(4) the object to be attained;

(5) the former law, if any, including other laws upon the same or similar subjects;

(6) the consequences of a particular interpretation;

(7) the contemporaneous legislative history; and

(8) legislative and administrative interpretations of the statute.

Minn.Stat. § 645.16. This court is "to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). "Although this court retains the authority to review de novo administrative interpretations of statutes, an agency's interpretation of a statute that it administers is

entitled to deference." *In re Kleven*, 736 N.W.2d 707, 709 (Minn.App.2007).

### 1. *Purpose*

■ Here, relator challenges DEED's interpretation of a provision of the Minnesota Unemployment Insurance Law, Minn. Stat. §§ 268.001–.23 (2006). The primary purpose of the program is to "provid[e] workers who are unemployed through no fault of their own a temporary partial wage replacement" to assist them in finding new employment. Minn.Stat. § 268.03, subd. 1 (2006). This statement of public policy is not to be ignored in determining whether benefits are available under the statute. *Jenkins*, 721 N.W.2d at 293 (Gildea, J., dissenting) (citing *Grushus v. Minn. Mining & Mfg. Co.*, 257 Minn. 171, 175, 100 N.W.2d 516, 519 (1960)). In order to effectuate this purpose, provisions that disqualify a person for benefits are narrowly construed. *Garcia v. Alstom Signaling, Inc.*, 729 N.W.2d 30, 33 (Minn. App.2007).

### 2. *Legislative History*

Legislative history is relevant to interpretation of a statute. Minn.Stat. § 645.16(7). The meaning of the transportation requirement was raised during the legislative hearings in the following exchange:

> Sen. Anderson: [Does section 268.085] repeat what's already in the rules? I wasn't aware of this before, for example, you have to have transportation throughout the labor market area to be considered available, is that, that's been what the rule has been? I'm just curious how that gets interpreted.

Mr. Nelson:[4] [Subdivision 15(e) ] is almost exactly word for word from [the Minnesota Rules] § 3305.0500. There is nothing new here. Yes, you do have to have transportation throughout your labor market area. That usually comes up ... in a situation which someone lives in rural Minnesota, then all of a sudden, doesn't have a car anymore. And they may be out on a farm and say I can't get anywhere to work.

> Sen. Anderson: That means they get no benefits?

> Mr. Nelson: The law would provide that you're not available for work because you don't have transportation. The law does require that you be available for work. Transportation being among the most fundamental requirements. In the metropolitan area, of course, there is the mass transit available. The metro area is not generally a problem. But in outstate, it can be, if you live in a very rural area and you lose your transportation. But this is the present law.

> Sen. Anderson: This is the present law. Thank you.

Hearing on S.F. No. 1218 Before the Senate Comm. on Jobs, Energy, and Community Development (Mar. 19, 1999).

As indicated by this exchange, the legislature was advised that an applicant's access to transportation under subdivision 15(e) is determined by the surrounding circumstances. Mr. Nelson, as an agency witness, acknowledged that access to the metropolitan mass-transit system, and willingness to use it, is generally adequate to meet the demands of the "availability" requirement of subdivision 15(e). The rule that Nelson referred to as being codified

---

**4.** We note that Nelson, who testified at the legislative hearing, was then an attorney on the staff of DEED and is one of the attorneys representing DEED as respondent in this proceeding. Because Nelson was not aware in 1999, when he testified, that he would be acting in an advocacy role in 2008, the legislative testimony may be considered in this proceeding.

by subdivision 15(e) read "[a] claimant . . . must have transportation from residence *to* labor market area." Minn. R. 3305.0500, subp. 13 (1997) (emphasis added), *repealed by* 1999 Minn. Laws ch. 107, § 67, at 456.

### 3. Administrative History

The precursor rule, as explained by Nelson at the legislative hearing, apparently represents the position of DEED in this appeal that Bui should not be considered unavailable to work because he does not own a vehicle. Rather, access and willingness to use public transportation is generally sufficient to satisfy the availability requirement in the metro area. This court considers the agency position in interpreting the statute. *Kleven*, 736 N.W.2d at 709. The Minnesota unemployment insurance program does not expressly limit benefits to people who have cars, or to people who can travel to every worksite within a labor market. The legislature was capable of imposing such a requirement had it so desired. In enacting the statute, the legislature demanded that the applicant's "attachment to the work force" be genuine.[5] Minn.Stat. § 268.085, subd. 15(a). A determination of an applicant's access to transportation should be considered in those terms.

### 4. Absurd Result

We also consider whether Work Connection's interpretation would lead to an absurd result if accepted. "In seeking for the meaning of a statute, it is proper to consider the result which would follow a particular construction. The legislature cannot be presumed to intend to bring about an absurd or unjust condition."

*Johnson Motor Co., Inc. v. Cue*, 352 N.W.2d 114, 116–17 (Minn.App.1984) (quoting *Minneapolis, St. Paul & Sault Ste. Marie Ry. v. Pierce*, 103 Minn. 504, 508, 115 N.W. 649, 651 (1908)), *review denied* (Minn. Oct. 11, 1984); *see also* Minn. Stat. §§ 645.16(6) (allowing a consideration of the consequences of a particular interpretation of a law as a method of construction), .17(1) (2006) (instructing courts to presume that the legislature does not intend an absurd or unreasonable result).

The effect of Work Connection's argument would be to exclude from unemployment benefits those who rely on mass transit to get to work. For the fiscal year ending June 30, 2008, the Minnesota State Legislature appropriated $93,453,000 to the Metropolitan Council for bus system operations. 2007 Minn. Laws ch. 143, art. 1, § 4, subd. 2, at 1592. Commuter transit is a recognized purpose of our public transportation system. Further, public transportation is heavily used by many low-income workers to commute, and their eligibility for benefits would be compromised if we found this form of transportation to be inadequate. Having invested significant effort and resources to provide an extensive transportation system that employees in the metro area can use to get to work, it would be absurd to conclude that the legislature intends that unemployed workers who rely on that system be considered unavailable for work in the labor market and disqualified from receiving unemployment benefits.

▬ We conclude that the term "throughout the labor market area" does not require every applicant for unemploy-

---

5. We acknowledge that, as recognized in the legislative hearing reproduced above, a car may be required in some cases in order for an applicants' attachment to the labor market to be genuine, as when they reside at a location without alternative access to the labor mar-

ket. In some places, it is common for people to walk or bike to work, such as around small towns or in urban areas. In others, such as the suburbs, this method of transportation may not be adequate to show a genuine attachment to the work force.

ment benefits to have personal automobile transportation. Rather, an applicant's eligibility under the transportation requirement of Minn.Stat. § 268.085, subd. 15(e), is determined by examining an applicant's particular circumstances, and whether the applicant has access to transportation such that they are available for work.

*D.  Application*

■    Bui's reliance on public transportation must be evaluated in terms of his situation. Bui worked as a line assembly packager for $8.25 per hour. He was subsequently offered a job in warehouse shipping and receiving at $10 per hour. From the record, it appears that he is an unskilled, trainable laborer who lives in Brooklyn Park close to a bus line. He is not a highly paid or specialized worker with a limited number of potential employers. There are many labor positions in various locations throughout [6] the Twin Cities metropolitan area for unskilled, trainable laborers. The routes of the public transportation system in this metropolitan area reach a vast number of these employers. The ULJ found that

> [t]he evidence shows that Bui worked for the employer for approximately two years and took a bus to work. The unrefuted facts are that Bui did not have a car and he lives in Brooklyn Park. The offer of September 18, 2006 was in Coon Rapids, and admittedly not on a bus line. The employer does not dispute this. Bui would have public transporta-

tion to a reasonable number of locations in the labor market area. He would be available for employment at any location which is on a bus line. Therefore, it cannot be said that Bui is not available for employment in the labor market area.

These findings are complemented by those in the ULJ's initial order, which stated that Bui credibly testified that he had employed good-faith efforts in attempting to obtain transportation through his relatives.

We conclude that the ULJ's finding that Bui, as an unskilled, trainable worker, was available for employment throughout the labor market area is supported by substantial evidence.[7] Bui's access to and willingness to use public transportation is not disputed. The ULJ concluded that Bui met the requirement of having "transportation throughout the labor market area" as required by Minn.Stat. § 268.085, subd. 15(e). Based on this record and our limited standard of review of factual findings, we affirm that determination.

## DECISION

This court may review questions first raised and considered by the ULJ on a request for reconsideration. Accordingly, we review the question of whether respondent has adequate transportation to be available for employment under Minn.Stat. § 268.085, subd. 15(e). We conclude that respondent's reliance on public transit is adequate to satisfy the requirement of

---

6.   Again, we do not use the term "throughout" to mean that labor jobs are available at every place within the metro area, but rather that there are many such jobs dispersed within the specified geographical range.

7.   Work Connection points out that the proffered warehouse job was located only about 6 miles from Bui's home. We note that Bui was not informed of the location of the warehouse until the initial evidentiary hearing

with the ULJ. Regardless, this factual information was part of relator's argument that Bui did not decline the position for "good cause" under Minn.Stat. § 268.085, subd. 13c(b), not its claim on appeal that Bui was unavailable for suitable employment. Work Connection has not appealed the ULJ's determination that Bui declined the job offer for good cause, and we do not consider that question.

transportation throughout the labor market area, *id.*, and that respondent is therefore eligible for unemployment compensation.

**Affirmed.**

SCHELLHAS, Judge (concurring in part and dissenting).

I concur with the majority that this court may properly consider arguments raised in Work Connection's motion for reconsideration before the ULJ, but I respectfully dissent with the majority's affirmance of the ULJ's eligibility decision.

The majority begins by stating that "[r]elator employer appeals from the award of unemployment-insurance benefits to respondent employee, arguing that the employee who relies on public transportation is not available for employment throughout the labor market area as required by Minn.Stat. § 268.085, subd. 15(e) (2006)." But Work Connection does not make this argument. Work Connection argues that Bui is not eligible for unemployment-insurance benefits because he lacks transportation throughout his labor market area. Citing Minn.Stat. § 268.085, subd. 15(a), (e), Work Connection argues that whatever Bui's mode of transportation, public or otherwise, he "must have transportation throughout the labor market area to be considered 'available for suitable employment,'" i.e., "ready and willing to accept suitable employment in the labor market area." Work Connection argues that Bui's lack of transportation, whatever modes are lacking, is a restriction that is self-imposed or imposed by circumstances and, as such, a restriction that renders Bui unavailable for suitable employment. *Id.* In short, Work Connection argues that because Bui lacks "transportation throughout the labor market area," he cannot be considered to be "available for suitable employment," and

therefore cannot be eligible for unemployment benefits under the plain meaning of the statute. *Id.*

The ULJ, in his Order of Affirmation, noted that "Bui would have public transportation to a reasonable number of locations in the labor market area" and that he "would be available for employment at any location which is on a bus line" and that "[t]herefore, it cannot be said that Bui is not available for employment in the labor market area." This conclusion conspicuously omits the word, "throughout," ignoring the plain language of Minn.Stat. § 268.085, subd. 15(e), which provides that "[a]n applicant *must* have transportation *throughout* the labor market area to be considered 'available for suitable employment.'" (Emphasis added.)

The majority frames the eligibility issue as "whether Bui was available for employment and thus eligible for unemployment benefits despite his reliance on public transportation." But "available for employment" is not a phrase found in the applicable statutes. The issue is whether Bui was available for *suitable* employment under Minn.Stat. § 268.085, subd. 15(a), (e). "Available for suitable employment" is defined by the legislature in Minn.Stat. § 268.085, subd. 15(a):

> "Available for suitable employment" means an applicant is ready and willing to accept suitable employment in the labor market area. The attachment to the work force must be genuine. An applicant may restrict availability to suitable employment, but *there must be no other restrictions, either self-imposed or created by circumstances, temporary or permanent, that prevent accepting suitable employment.*

(Emphasis added.) In addition, "[a]n applicant must have transportation *throughout* the labor market area to be considered

'available for suitable employment.'" *Id.,* subd. 15(e) (emphasis added).

The majority decides that the meaning of the term "throughout" is ambiguous and that whether an applicant has transportation throughout a labor market area depends on an applicant's specific circumstances. Relying on this construction of "throughout," the majority determines that because of "Bui's access to and willingness to use public transportation," "this meets the requirement of having 'transportation throughout the labor market area' as required by Minn.Stat. § 268.085, subd. 15(e)." I disagree.

The unemployment-benefits statutes are unambiguous. First, they contain no allowable restrictions for availability to suitable employment on the basis of reliance on public transportation or reliance on any specific mode of transportation. Minn. Stat. § 268.085, subd. 15(a). Second, the use of the term "throughout" in Minn.Stat. § 268.085, subd. 15(a), (e), is unambiguous. As noted by the majority, the plain meaning of "throughout," as it appears as a preposition in section 15(e), is the dictionary definition, "[i]n, to, through, or during every part of; all through." *The American Heritage Dictionary of the English Language* 1436 (4th ed.2000). "Throughout" is not reasonably subject to more than one interpretation; therefore, it is not ambiguous. The majority concludes that the definition of "throughout" urged by Work Connection is not appropriate because Work Connection relies on a dictionary definition of "throughout" in its adverb form: "[i]n or through all parts; everywhere." The distinction between the definitions of "throughout" as an adverb and a preposition is insignificant and, in this case, whichever definition is used, the ULJ reached his decision completely ignoring the presence of the word "through-

out" in Minn.Stat. § 268.085, subd. 15(e), when he concluded that:

> Bui would have public transportation to a reasonable number of locations in the labor market area. He would be available for employment at any location which is on a bus line. *Therefore, it cannot be said that Bui is not available for employment in the labor market area.*

(Emphasis added.)

Using the definition of "throughout," as a preposition, and applying that definition in this case, the issue is whether Bui had transportation "in, to, through, or during every part of" or "all through" his labor market area. If reliance on public transportation does not provide access to "every part of" Bui's labor market area, or "all through" his labor market area, Bui does not have "transportation throughout the labor market area" and therefore is not "available for suitable employment" under Minn.Stat. § 268.085, subd. 15(a).

While I am mindful that the public policy in chapter 268 urges us to narrowly construe disqualification provisions, I see no reason to apply a different standard to an employee declining the offer of new employment because of lack of transportation than the standard applied by the Minnesota Supreme Court to an employee leaving a job he already has because of a lack of transportation. In *Hill v. Contract Beverages, Inc.,* 307 Minn. 356, 240 N.W.2d 314 (1976), the supreme court denied unemployment benefits to an employee who could no longer get to his employment because of a shift change unilaterally imposed by his employer. In support of its conclusion, the supreme court said:

> When relator originally accepted the employment on the third shift, he had no knowledge that he would be able to obtain transportation from some person on that shift or any other shift. Relator

accepted the employment before he obtained the transportation upon the expectation that he could find a fellow employee who would provide his transportation. Fortunately, he found transportation on his assigned shift, but the fact that such transportation was not available on another shift cannot be attributed as a fault of the employer. *In the absence of contract or custom imposing an obligation of transportation upon the employer, transportation is usually considered the problem of the employee.*

*Id.* at 358, 240 N.W.2d at 316 (emphasis added) (citations omitted).

Here, like *Hill*, when first hired, Bui did not tell Work Connection about his lack of transportation or dependence on public transportation. In fact, he both rode the bus and biked to the employment from which he was terminated. That employment was approximately four miles from Bui's home. He then declined Work Connection's offer of full-time employment that was approximately six miles from his home because the employment was beyond the bus line. The employment Bui declined was well within Bui's labor market area. *See Preiss v. Comm'r of Economic Security*, 347 N.W.2d 74, 76 (Minn.App. 1984) (concluding that a drive of 22 miles does not render an available position unsuitable).

The majority states that "[t]he effect of Work Connection's argument would be to exclude from unemployment benefits those who rely on mass transit to get to work." I disagree; this purported effect is exaggerated. The effect of not applying the plain meaning of Minn.Stat. § 268.085, subd. 15(e), as written, is to shift the burden of transportation from employees to employers in violation of clear statutory language and judicial precedent.

The legislature could have provided that applicants who are dependent on public transportation are deemed to have transportation throughout the labor market, *see* Minn.Stat. § 268.085, subd. 15(e), or that applicants may restrict their availability to only that employment accessible by public transportation, *see id.*, subd. 15(a), but it has not done so. For this court to construe subdivision 15(a) and (e) to include that language is, in effect, to modify the statute, and that is unauthorized. *See State v. Fleck*, 281 Minn. 247, 252, 161 N.W.2d 309, 312 (1968) (It must be assumed that, had the legislature desired to expand upon 627.01, it would have effectuated this desire by amending that section.). We must presume that when the legislature enacted section § 268.085, subdivision 15, it acted with full knowledge of previous statutes, agency rules, and existing case law. *See Minneapolis E. Ry. Co. v. City of Minneapolis*, 247 Minn. 413, 418, 77 N.W.2d 425, 428 (1956) (quoting rule that when legislature enacted statutes it was presumed to have in mind all existing laws relating to the subject matter). Under Minn.Stat. 268.085, subd. 15(e), Bui was required to have transportation throughout the labor market area, and Bui failed to satisfy that requirement. Therefore, he was not available for suitable employment and is not eligible for unemployment benefits.

I would reverse the ULJs decision finding Bui eligible for unemployment-insurance benefits when he declined the full-time employment offered to him by Work Connection.