*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1098**

Francis Kiyimba,
Relator,

vs.

Department of Employment and Economic Development,
Respondent.

**Filed February 29, 2016
Affirmed
Halbrooks, Judge**

Department of Employment and Economic Development
File No. 33574978-2

Francis Kiyimba, Savage, Minnesota (pro se relator)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

Considered and decided by Reyes, Presiding Judge; Peterson, Judge; and Halbrooks, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Relator challenges the decision of the unemployment-law judge (ULJ) that he is ineligible for unemployment benefits because he was not available for suitable employment. We affirm.

**FACTS**

Relator Francis Kiyimba was employed as a seasonal part-time parcel assistant for FedEx Smartpost from November 11, 2014 to January 2, 2015.[1] At Fedex Smartpost, Kiyimba usually worked between 18 and 20 hours per week but did occasionally work more hours because it was the holiday season. When he was hired by FedEx, he lived approximately two miles from the worksite. But in December 2014, Kiyimba separated from his wife and moved into a friend's house approximately 30 miles from the FedEx location. He commuted this distance until, due to the seasonal nature of his employment, he was laid off on January 2, 2015.

When he was laid off from FedEx, Kiyimba established an unemployment benefit account, effective January 18, 2015, with a base period of January 1, 2014 to December 31, 2014. On January 21, 2015, an HR representative from FedEx Smartpost e-mailed Kiyimba to notify him that permanent parcel assistant positions were available at the same pay and number of hours as he had previously worked. He did not reply to this e-mail because it was no longer feasible for him to travel to that FedEx Smartpost location after his move.

Respondent Minnesota Department of Employment and Economic Development (DEED) made an initial determination that Kiyimba was eligible for benefits, stating that "[t]he employment was not suitable for the applicant because of the commuting distance." FedEx Smartpost appealed that determination, asserting that the "distance was

---

[1] Prior to working for FedEx, Kiyimba was employed for a short period of time by Aerotek, a staffing agency. Aerotek placed Kiyimba in a Walgreens location, where he worked 40 hours per week during the hours of 2:00 p.m. to 11:00 p.m.

suitable for the applicant when they worked here previously and we currently have open positions available." The ULJ held a hearing to address the issue of whether Kiyimba "failed to apply for suitable employment or failed to accept or avoided suitable employment when offered without good cause."

The ULJ determined that Kiyimba is ineligible for unemployment benefits beginning January 18, 2015, because he was not available for suitable employment, concluding that Kiyimba did not want to work full-time or be available during the day due to circumstances in his personal life. Kiyimba appealed this determination, claiming that he was not on notice that the ULJ was going to consider the issue of whether he was available for suitable employment. The ULJ issued an order of affirmation, noting that any statements Kiyimba made in his request for reconsideration would not have changed the outcome of her decision. This certiorari appeal follows.

## D E C I S I O N

The purpose of Minnesota's unemployment-insurance program, codified in Minnesota Statutes chapter 268, is to assist those who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2014). The chapter is remedial in nature and must be applied in favor of awarding benefits, and any provision precluding receipt of benefits must be narrowly construed. Minn. Stat. § 268.031, subd. 2 (2014). "[E]ntitlement to unemployment benefits must be determined based upon that information available without regard to a burden of proof." Minn. Stat. § 268.069, subd. 2 (2014).

We may reverse or modify a ULJ's decision if the relator's substantial rights

3

may have been prejudiced because the [ULJ's] findings, inferences, conclusion, or decision are:

>  (1)     in violation of constitutional provisions;
>
>  (2)     in excess of the statutory authority or jurisdiction of [DEED];
>
>  (3)     made upon unlawful procedure;
>
>  (4)     affected by other error of law;
>
>  (5)     unsupported by substantial evidence in view of the entire record as submitted; or
>
>  (6)     arbitrary or capricious.

Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). "In unemployment benefit cases, the appellate court is to review the ULJ's factual findings in the light most favorable to the decision and should not disturb those findings as long as there is evidence in the record that reasonably tends to sustain them." *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotation omitted). But "we exercise independent judgment with respect to questions of law," *Rowe v. Dep't of Emp't & Econ. Dev.*, 704 N.W.2d 191, 194 (Minn. App. 2005) (citing *Ress v. Abbott Nw. Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn. 1989)), and "we review the ULJ's ineligibility determination de novo," *Neumann v. Dep't of Emp't & Econ. Dev.*, 844 N.W.2d 736, 738 (Minn. App. 2014) (citing *Ress*, 448 N.W.2d at 523).

**I.**

Kiyimba argues that the ULJ addressed the issue of his availability for suitable employment during the evidentiary hearing without giving him adequate notice that determinations would be made based on his answers. The Minnesota Rules "establish procedures for hearings conducted by unemployment law judges." Minn. R. 3310.2901 (2015). The chief ULJ "must send a notice of hearing, by mail or electronic transmission,

to each party at least ten calendar days before the scheduled date of hearing unless notice is waived by the parties." Minn. R. 3310.2905, subp. 2 (2015). But a ULJ "may take testimony and render a decision on issues not listed on the notice of hearing if each party is notified on the record, is advised of the right to object, and does not object." Minn. R. 3310.2910 (2015).

The notice of hearing stated that the issue to be considered consisted of "[w]hether Francis Kiyimba is ineligible for eight calendar weeks for failing to apply, refusing, or avoiding an offer of suitable employment without good cause." At a certain point during the hearing, the ULJ recognized that there appeared specifically to be "an issue of whether [Kiyimba had] been available for suitable employment based on [his] commuting, [his] commuting expectations or . . . , how far [he was] willing to commute." The ULJ then asked him, "Would you have any objection to me considering that issue in today's hearing or would you prefer to be sent a questionnaire to fill out about that after the hearing instead." Kiyimba responded, "I think I have no objection for you considering that."

After this colloquy, the ULJ told Kiyimba that she did not have any further questions. Kiyimba then, unprompted, volunteered information about personal issues related to his divorce and immigration status. After a lengthy description of these issues and some follow-up questions, the ULJ asked, "[W]ould you have any objection to me considering whether you've been available for suitable employment due to the personal issues that you were having in your life." Kiyimba replied that he did not have any objection to that.

5

The ULJ did not violate rule 3310.2910. The ULJ notified Kiyimba that she would consider these issues and asked him if he had any objection to her doing so. Kiyimba did not object to the ULJ's immediate consideration of the issues; instead, he expressly consented to such consideration.

## II.

Kiyimba argues that the ULJ never gave him the opportunity to present evidence that he was available for full-time employment and looking for work at all times and that she, therefore, improperly rejected his request for reconsideration. A ULJ

> must not consider any evidence that was not submitted at the hearing, except for purposes of determining whether to order an additional hearing.
>
> The unemployment law judge must order an additional hearing if a party shows that evidence which was not submitted at the hearing:
> (1) would likely change the outcome of the decision and there was good cause for not having previously submitted that evidence; or
> (2) would show that the evidence that was submitted at the hearing was likely false and that the likely false evidence had an effect on the outcome of the decision.

Minn. Stat. § 268.105, subd. 2(c) (2014).

Kiyimba submitted a document in support of his request for reconsideration in which he stated, "I have been available for suitable or fulltime employment since Jan 2nd 2015 and I have been taking all the necessary steps to getting full time employment including keeping in touch with employment agencies, making job applications and attending interviews, seminars and courses with the workforce center." Kiyimba maintains on appeal that "[l]ong before the hearing process began I was already enrolled

6

in the displaced worker program at the work force center and an approved training plan was in line for me which I was following to be able to become a professional licensed commercial Driver (CDL)."

A new hearing must be ordered if new evidence would likely change the outcome of the decision *and* there was good cause for not having previously submitted that evidence. Minn. Stat. § 268.105, subd. 2(c). Thus, a new hearing requires that both elements be satisfied.

An applicant is ineligible for unemployment benefits for eight calendar weeks if the applicant, without good cause, fails to apply for available suitable employment, fails to accept suitable employment, or avoids an offer of suitable employment. Minn. Stat. § 268.085, subd. 13c(a) (2014). "'Good cause' is a reason that would cause a reasonable individual who wants suitable employment to fail to apply for, accept, or avoid suitable employment. Good cause includes . . . [enrollment] in reemployment assistance training[.]" *Id.*, subd. 13c(b)(2) (2014).

Kiyimba met the first component of the statutory requirements. The fact that he was enrolled in workforce center training may have been new evidence that would have altered the ULJ's decision. But Kiyimba is entitled to a new hearing only if he can also show that he had good cause for not submitting that evidence previously. Minn. Stat. § 268.105, subd. 2(c)(1). "Good cause" is defined as "[a] legally sufficient reason." *Black's Law Dictionary* 251 (9th ed. 2009). Kiyimba provided no reason as to why he did not disclose that he was involved in an employment assistance training program at the time of the hearing; he stated only generally that the ULJ never gave him the opportunity

to present evidence. But our review of the hearing transcript reveals that the ULJ did provide Kiyimba with that opportunity.

Because Kiyimba did not provide any reason as to why he did not present evidence of his involvement in the workforce program, the ULJ did not err in refusing to order a new hearing based on evidence that was known but not presented at the initial hearing.

**III.**

Kiyimba challenges the merits of the ULJ's determination that he was unavailable for suitable employment. An applicant may be eligible to receive unemployment benefits for any week if the applicant was available for suitable employment. Minn. Stat. § 268.085, subd. 1(4) (Supp. 2015). Available for suitable employment means that

> an applicant is ready, willing, and able to accept suitable employment. The attachment to the work force must be genuine. An applicant may restrict availability to suitable employment, but there must be no other restrictions, either self-imposed or created by circumstances, temporary or permanent, that prevent accepting suitable employment.

Minn. Stat. § 268.085, subd. 15(a) (2014). Additionally,

> [a]n applicant who has restrictions on the hours of the day or days of the week that the applicant can or will work, that are not normal for the applicant's usual occupation or other suitable employment, is not "available for suitable employment." An applicant must be available for daytime employment, if suitable employment is performed during the daytime, even though the applicant previously worked the night shift.

*Id.*, subd. 15(d) (2014). Whether an applicant is available for suitable employment is a question of fact. *See Neumann v. Dep't of Emp't & Econ. Dev.*, 844 N.W.2d 736, 738-39

8

(Minn. App. 2014) (explaining the circumstances leading to the ULJ to find that Neumann had not been engaging in reasonable diligent efforts to find suitable employment); *Work Connection, Inc. v. Bui*, 749 N.W.2d 63, 72 (Minn. App. 2008) (explaining that the "ULJ's [factual] finding that Bui, as an unskilled, trainable worker, was available for employment throughout the labor market area is supported by substantial evidence"), *review granted* (Minn. June 18, 2008) *and appeal dismissed* (Minn. July 6, 2009). "This court views the ULJ's factual findings in the light most favorable to the decision. This court also gives deference to the credibility determinations made by the ULJ. As a result, this court will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Peterson v. Nw. Airlines, Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008) (citations omitted), *review denied* (Minn. Oct. 1, 2008); *see also Cunningham v. Wal-Mart Assocs.*, 809 N.W.2d 231, 235 (Minn. App. 2011) (stating that "[f]indings of fact will be upheld if they are supported by substantial evidence in light of the entire record").

Here, the ULJ determined that Kiyimba was not available for suitable employment because he "does not want to work full-time, and cannot work a regular job on the day shift because he needs to be able to attend court and meet with his lawyer and counselor during the day." The ULJ based this finding on Kiyimba's testimony that his personal issues might interfere with full-time work—that it would have been hard for him to commit to a company that required availability for a continuous eight-hour daytime shift. He referenced these issues by testifying, "I didn't want to commit myself and then . . .

9

start asking for offs," and "I don't think I would have worked full-time for any company at that time."

We are sympathetic to Kiyimba's circumstances. But we are not permitted to allow unemployment benefits based on equity. Minn. Stat. § 268.069, subd. 3 (2014). On this record, we conclude that the ULJ's finding that Kiyimba was not available for suitable employment is supported by substantial evidence. *See* Minn. Stat. § 268.105, subd. 7(d)(5).

**Affirmed.**