**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1434**

Mohamed Yusuf,
Relator,

vs.

Masterson Personnel, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed May 16, 2016
Reversed
Reyes, Judge**

Department of Employment and Economic Development
File No. 33566802-3

Alicia L. Anderson, Edina, Minnesota (for relator)

T. Michael Kilbury, Peterson, Logren and Kilbury, P.A., St. Paul, Minnesota (for respondent Masterson Personnel, Inc.)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Randall, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**S Y L L A B U S**

When an employee completes a job assignment that is unsuitable because it is no longer in the employee's labor market, Minn. Stat. § 268.095, subd. 2(d) (2014), does not apply to preclude the employee from receiving unemployment benefits.

**O P I N I O N**

**REYES**, Judge

In this unemployment-compensation appeal, relator challenges a decision by an unemployment-law judge (ULJ) that he quit his employment with a staffing service by failing to request an additional job assignment within five days after completing a suitable assignment. Relator asserts that the ULJ erred by applying the quit provision of Minn. Stat. § 268.095, subd. 2(d), because relator did not understand the statutorily required notice as it was written in English and because his job assignment in Faribault was no longer suitable after he moved to Plymouth. We reverse.

**FACTS**

Relator Mohamed Yusuf applied for and was denied unemployment benefits on the basis that he did not request another job assignment after completing his initial temporary assignment with respondent, Masterson Personnel, Inc. (Masterson), a staffing service. Relator appealed the determination of ineligibility by respondent, Minnesota Department of Employment and Economic Development (DEED), and a ULJ held an evidentiary hearing. At the hearing, relator testified through an interpreter and was represented by counsel. Masterson's operations manager, J.R., testified on behalf of Masterson. The following facts are based on relator's and J.R.'s testimony.

2

On July 11, 2014, relator began employment for Masterson by loading and unloading boxes at $10.25 an hour temporarily for Tru Vue, Inc., located in Faribault. Prior to starting his assignment, Masterson gave relator a copy of a statutorily required notice, and relator signed it. The notice stated that, "[a]n applicant who, within five calendar days after completion of a suitable job assignment from a staffing service (1) fails without good cause to affirmatively request an additional suitable job assignment . . . is considered to have quit employment." Relator acknowledged that he received the notice and he signed it, but denied knowledge of its contents because he neither reads nor writes in English.

When relator started the Faribault job assignment, he was living in Owatonna. It is undisputed that he was a valued employee. On November 18, 2014, relator informed Masterson that he was moving to the Twin Cities soon and requested a job assignment in that area. The same day, Masterson offered relator various assignments then available in the Twin Cities. On December 1, 2014, relator again informed Masterson that he was moving to the Twin Cities and requested a job assignment in that area. Again, the parties discussed a job assignment in the Twin Cities, but relator was still living in Owatonna. Masterson asked relator to call back in two weeks. On December 18, 2014, relator called to inform Masterson that he had moved to Plymouth and to update his mailing address. Relator also requested an assignment closer to Plymouth, but Masterson said there were no positions available. Relator drove from Plymouth to Faribault, which is approximately 60 miles away, from mid-December 2014 until he completed his assignment on March 7, 2015.

3

Relator testified that, on March 9, 2015, he borrowed a phone to call Masterson because his phone was not working. He stated that he spoke to J.R., who is in charge of Masterson's staffing, and requested another job assignment because he needed a job, but he was told that there were none available. J.R. testified that Masterson's business records did not reflect that appellant had called.

On March 11, 2015, Masterson left a voicemail for relator to inform him that it had a new assignment at Tru Vue in Faribault. In April 2015, despite multiple attempts, Masterson was unsuccessful in contacting relator because relator's phone was not functioning properly. On April 21, 2015, when his phone was operational, relator contacted Masterson, and requested the dates of his previous employment, for his unemployment-insurance application.

On June 19, 2015, the ULJ determined that relator qualified for unemployment benefits because he was not provided clear and concise notice of the quit provision under Minn. Stat. § 268.095 and his assignment was not suitable for him when it ended. Masterson filed a request for reconsideration. The same ULJ changed course, determining that Masterson presented relator with a document that satisfied the statute, relator failed to request another job assignment within five calendar days, which constituted a quit, and therefore relator did not qualify for unemployment benefits. This certiorari appeal follows.

**ISSUE**

Did the ULJ err in determining that the quit provision under Minn. Stat. § 268.095, subd. 2(d), applies to relator's circumstances, thus precluding him from receiving unemployment benefits?

**ANALYSIS**

This court reviews a ULJ's decision to determine whether the findings, inferences, conclusions, or decision are in violation of constitutional provisions, in excess of statutory authority, made upon unlawful procedure, affected by an error of law, unsupported by substantial evidence, or arbitrary and capricious. Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). The purpose of the Minnesota Unemployment Insurance Law is to assist those who are "unemployed through no fault of their own." Minn. Stat. § 268.03, subd. 1 (2014). It "is remedial in nature and must be applied in favor of awarding benefits," and any provision precluding receipt of benefits "must be narrowly construed." Minn. Stat. § 268.031, subd. 2 (2014). There is no burden of proof in unemployment-insurance proceedings, nor is there equitable denial or allowance of benefits. Minn. Stat. § 268.069, subds. 2, 3 (2014).

Appellate courts "review the ULJ's factual findings in the light most favorable to the decision." *Stagg v. Vintage Place, Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotation omitted). This court will affirm so long as substantial evidence supports the ULJ's findings. *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 533 (Minn. App. 2007). Statutory interpretation of the Minnesota Unemployment Insurance Law is a

5

question of law that appellate courts review de novo. *Engfer v. Gen. Dynamics Advanced Info. Sys., Inc.*, 869 N.W.2d 295, 300 (Minn. 2015)

## I.     Suitable job assignment

Under Minn. Stat. § 268.095, subd. 2(d), "[a]n applicant who, within five calendar days after completion of a suitable job assignment from a staffing service . . . fails without good cause to affirmatively request an additional suitable job assignment . . . is considered to have quit employment." "Suitable employment" is defined as "employment in the applicant's labor market area that is reasonably related to the applicant's qualifications." Minn. Stat. § 268.035, subd. 23a(a) (2014). The statute lists various factors in determining suitability of employment, including "the distance of the employment from the applicant's residence." *Id*. Whether an offer of employment is suitable is a question of fact. *Zielinski v. Ryan Co.*, 379 N.W.2d 157, 159 (Minn. App. 1985).

Relator and DEED argue that this quit provision[1] does not apply because, the job assignment relator completed was unsuitable as it was no longer in his labor-market area. As such, they argue that Minn. Stat. § 268.095, subd. 2(d), is inapplicable because relator did not complete "a suitable job assignment" as defined under the statute and he is therefore not precluded from receiving unemployment benefits. We agree.

---

[1] Relator refers to Minn. Stat. § 268.095 (2014 & Supp. 2015) as a "constructive quit" statute, but the word "constructive" is not in the statute, nor does relator offer any legal citation or argument as to why it should be referred to as a "constructive quit" rather than a "quit."

6

The ULJ found that relator moved to Plymouth in December 2014, notified Masterson of the move, and requested a job assignment in the Twin Cities at that time. The ULJ further found that Masterson provided relator "with several assignments closer to where he lived, but [relator] elected to commute to Fairbault [sic] and continue [sic] working at Tru Vue." The ULJ concluded that, although relator moved to a new labor market in December 2014, he completed the job assignment at Tru Vue, he failed to request another assignment within five days, and therefore he quit. Notably, the ULJ did not determine whether the completed job assignment was suitable.

Other factors to consider in determining suitability of employment under the statute are not in dispute in this case. *See* Minn. Stat. § 268.035, subd. 23a(a). It is undisputed that relator initially lived in Owatonna, Tru Vue is located in Faribault, his assignment at that time was suitable because the employment was reasonably related to his qualifications, and the employment was in his labor market because Tru Vue was a reasonable distance from his residence.[2] *Id.*; *see also Preiss v. Comm'r of Econ. Sec.*, 347 N.W.2d 74, 76 (Minn. App. 1984) (concluding that a drive to work of "22 miles does not render an available position unsuitable").

However, once relator moved to Plymouth, in the Twin Cities, his job assignment at Tru Vue in Faribault, which is approximately 60 miles south of the Twin Cities, became unsuitable because he no longer lived in the Owatonna labor-market area. *See*

---

[2] We take judicial notice that the distance from Owatonna to Faribault is approximately 17 miles. *See* Minn. R. Evid. 201.

Minn. Stat. § 268.035, subd. 23a(a) (defining suitable employment as "employment in the applicant's labor market"). Moreover, as an unskilled laborer, the distance from relator's new residence in Plymouth to Faribault put him outside of the labor market area he originally lived in. Following relator's move, his labor market included job assignments in the Twin Cities metropolitan area as an "unskilled, trainable laborer." *See Work Connection, Inc. v. Bui*, 749 N.W.2d 63, 72 (Minn. App. 2008) (noting that an unskilled, trainable laborer who is not a "highly paid or specialized worker" and who lives in the Twin Cities has a labor market of the Twin Cities), *review granted* (Minn. June 18, 2008) *and appeal dismissed* (Minn. July 6, 2009). Therefore, because the Twin Cities became relator's labor market area, and because relator is an unskilled trainable laborer, we conclude that the job assignment at Tru Vue in Faribault became an unsuitable assignment.

Masterson argues that it offered relator job assignments in the Twin Cities, but relator failed to accept them. However, these offers were made in November and early December, prior to relator's move to the Twin Cities. As a result, these offers were unsuitable because they were in the Twin Cities and outside his labor-market area at that time. After relator moved to Plymouth, he continued to work for Tru Vue and commuted to Faribault, even though it had become an unsuitable job assignment.[3] *See id.*; *see also Fredenburg v. Control Data Corp.*, 311 N.W.2d 860, 864 (Minn. 1981) (noting that 60

---

[3] We note that after relator moved to the Twin Cities, he continued to commute to Faribault, and he completed the job assignment. However, had he instead *quit* the ongoing Tru Vue assignment because of his relocation, he would be ineligible for unemployment benefits. *See* Minn. Stat. § 268.095, subd. 1 (2014).

miles outside Twin Cities metropolitan area does not constitute employee's community in workers' compensation cases). Therefore, we hold that when an employee completes a job assignment that is unsuitable because it is no longer in the employee's labor market, Minn. Stat. § 268.095, subd. 2(d), does not apply to preclude the employee from receiving unemployment benefits.

Masterson further argues that, even if the job assignment at Tru Vue became unsuitable due to relator's decision to move to the Twin Cities, the assignment at Tru Vue was completed as a suitable assignment prior to the date that relator moved. Masterson offers no caselaw in support of this argument. Mere assertions of error not supported by authority cannot be considered on appeal except where prejudice is obvious. *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997).

Last, Masterson argues that it offered relator a job assignment at Tru Vue after the completion date, which relator failed to accept. But because relator did not complete a *suitable* job assignment, we need not consider whether relator requested another job assignment within five calendar days or if Masterson offered relator a suitable job assignment. Moreover, whether Masterson offered relator a new assignment after he completed the original one has no bearing on the issue of whether relator requested an assignment within the statutory five-calendar-day period. Minn. Stat. § 268.095, subd. 2(d).

Because we conclude that relator's job assignment was unsuitable under Minn. Stat. § 268.095, subd. 2(d), we need not consider whether Masterson's notice was sufficient under Minn. Stat. § 268.095.

9

## D E C I S I O N

Because we conclude that relator completed a job assignment that was unsuitable as it was outside his labor market, Minn. Stat. § 268.095, subd. 2(d), does not apply to preclude the employee from receiving unemployment benefits.

**Reversed.**