*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0543**

Brent R. Henkel,
Relator,

vs.

City of Mountain Iron,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed December 27, 2016
Affirmed
Smith, Tracy M., Judge**

Department of Employment and Economic Development
File No. 33976385-3

Brent R. Henkel, Eveleth, Minnesota (pro se relator)

City of Mountain Iron, Mountain Iron, Minnesota (respondent)

Lee B. Nelson, St. Paul, Minnesota (for respondent department)

Considered and decided by Reyes, Presiding Judge; Johnson, Judge; and Smith, Tracy M., Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH, TRACY M.**, Judge

In this unemployment-insurance appeal, relator challenges the decision of an unemployment law judge (ULJ) that relator is ineligible for unemployment benefits.

Relator contends that the ULJ erred in concluding that the alleged drug crimes for which Henkel was discharged amounted to employment misconduct and aggravated employment misconduct. Because relator did not make legal arguments or cite authority, and because the ULJ's decision is supported by substantial evidence and not affected by legal error, we affirm.

**FACTS**

On September 10, 2015, relator Brent R. Henkel was charged with fifth-degree sale of marijuana and fifth-degree possession of methamphetamine arising out of events that occurred in June 2015. Henkel's employer, the City of Mountain Iron, learned about the criminal charges and suspended Henkel indefinitely without pay on September 23.

Henkel applied for unemployment benefits. The Department of Employment and Economic Development (DEED) determined that Henkel is eligible for benefits because the alleged crimes for which he was suspended "had no significant negative effect on the employment" and therefore were not employment misconduct.

On November 5, a sergeant of the St. Louis County Sheriff's Office sent a letter to the Mountain Iron city administrator informing him that Henkel had given an undercover officer a city-provided phone number to facilitate the marijuana sale. The phone number belonged to a cell phone that Henkel used as part of Mountain Iron's employee cell-phone program. Through this program, Henkel purchased his own phone for professional and personal use, and the city provided a phone number and paid a portion of the service bills.

The city appealed the determination of eligibility on November 18, arguing that Henkel was discharged for employment misconduct and thus was ineligible for

2

unemployment benefits. The city believed that Henkel's use of the city phone number in the commission of the alleged marijuana sale made Henkel's alleged crime "rise to the level of employment misconduct."

At a hearing on December 3, the ULJ told Henkel that he had a right to refuse to testify regarding the alleged criminal conduct, but that "for the purposes of unemployment benefits I can make a negative inference from your silence." When the ULJ asked Henkel whether he committed the alleged conduct for which he was suspended, Henkel declined to answer.

The ULJ issued findings of fact and a decision on December 8. The ULJ inferred from Henkel's refusal to answer certain questions at the hearing that the truthful answers "would have been unfavorable" to Henkel. The ULJ found that Henkel had committed the alleged acts of selling marijuana using the city-provided phone number and possessing methamphetamine.

The ULJ concluded that Henkel's conduct amounted to both employment misconduct and aggravated employment misconduct because it violated the employer's reasonable expectations, showed a substantial lack of concern for the employment, and had a significant adverse effect on the employment "because of the use of city services in the commission of the offense."

Henkel submitted a request for reconsideration on December 28, arguing that the decision "was based on many errors" in the factual findings, "overlooked evidence and errors in exhibits," and "misapplied laws." On February 29, 2016, the ULJ issued an order affirming the December 8 findings of fact and decision.

Henkel petitioned for a writ of certiorari for the court of appeals to review the ULJ's decision on reconsideration.

**D E C I S I O N**

Henkel's appellate brief states, in its entirety, "I was suspended for no just cause on Sept. 23, 2015. Then ULJ made his decision based on many errors in facts and over looked evidence & misapplied laws." Henkel does not identify any particular legal error or piece of evidence that was not considered. An appellant bears the burden of showing that the decision appealed from was in error and that prejudice resulted. *Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975). "[M]ere assertions" of error that are unsupported by argument or authority are waived and should not be considered on appeal unless prejudicial error is "obvious on mere inspection." *Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519-20, 187 N.W.2d 133, 135 (1971); *Yusuf v. Masterson Personnel, Inc.*, 880 N.W.2d 600, 605 (Minn. App. 2016). Henkel's brief merely asserts that the ULJ's decision was based on errors. He makes no specific arguments and cites no authority. No prejudicial error is obvious on mere inspection. *Schoepke*, 290 Minn. at 519-20, 187 N.W.2d at 135.

Henkel's arguments may be characterized as alleging that the ULJ's decision was "affected by other error of law" and "unsupported by substantial evidence." Minn. Stat. § 268.105, subd. 7(d)(4)-(5) (2014). We may reverse or modify a ULJ's decision if the substantial rights of the relator may have been prejudiced because the findings, inferences, conclusion, or decision are affected by legal error or unsupported by substantial evidence. *Id.*, subd. 7(d). Substantial evidence means "such relevant evidence as a reasonable mind

4

might accept as adequate to support a conclusion." *Carter v. Olmsted Cty. Hous. & Redevelopment Auth.*, 574 N.W.2d 725, 730 (Minn. App. 1998) (quotation omitted).

"Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law." *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotation omitted). Whether an employee committed a particular act is a question of fact that we view in the light most favorable to the ULJ's decision and affirm if it is supported by substantial evidence. *Skarhus v. Davanni's, Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). Whether a particular act constitutes employment misconduct is a legal question that we review de novo. *Id.*

Henkel's suspension is considered a discharge for purposes of unemployment benefits because it lasted more than 30 days. Minn. Stat. § 268.095, subd. 5(a) (2014). A discharged employee is generally eligible for unemployment benefits unless he was discharged for employment misconduct or aggravated employment misconduct. *Id.*, subd. 4 (2014). "Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2014). Aggravated employment misconduct means "the commission of any act, on the job or off the job, that would amount to a gross misdemeanor or felony if the act substantially interfered with the employment or had a significant adverse effect on the employment." *Id.*, subd. 6a(a)(1) (2014).

5

The ULJ concluded that Henkel was discharged for aggravated employment misconduct because he committed an act that amounts to a felony and that act had a significant adverse effect on the employment. This conclusion is supported by the ULJ's findings, which are in turn supported by the record.

The ULJ found by a preponderance of the evidence that Henkel possessed methamphetamine and used his city-provided phone number to sell marijuana. The drug possession and sale amount to "the commission of any act, on the job or off the job, that would amount to a gross misdemeanor or felony" under Minn. Stat. § 268.095, subd. 6a(a)(1). *See* Minn. Stat. § 152.025 (2014) (making the sale of marijuana and the unlawful possession of a Schedule II controlled substance fifth-degree crimes each punishable by up to five years imprisonment); *see also* Minn. Stat. § 152.02, subd. (d)(2) (2014) (making methamphetamine a Schedule II controlled substance); Minn. Stat. § 609.02, subd. 2 (2014) (defining "[f]elony" as "a crime for which a sentence of imprisonment for more than one year may be imposed").

Henkel's suggestion that the ULJ's decision is unsupported by substantial evidence is incorrect. The ULJ's findings that Henkel possessed methamphetamine and used a city-provided phone number to sell marijuana are supported by the city administrator's sworn testimony as well as written documents prepared by the city administrator, a police sergeant, and Henkel's former labor union. Henkel did not present evidence to rebut the allegations and did not deny that he committed the alleged conduct. A ULJ "may draw adverse inferences from the refusal of a party or witness to testify on the basis of any privilege." Minn. R. 3310.2922. Considering the evidence in the light most favorable to

6

the ULJ's decision, the evidence in the record amounts to substantial evidence supporting the ULJ's findings.

The remaining issue is whether Henkel's conduct substantially interfered with the employment or had a significant adverse effect on the employment. Minn. Stat. § 268.095, subd. 6a(a)(1). Minnesota courts have held that a public employee's off-duty criminal activity may interfere with and adversely affect employment, making the discharged employee ineligible for unemployment benefits. *See, e.g.*, *Pechacek v. Minn. State Lottery*, 497 N.W.2d 243, 246 (Minn. 1993) (concluding that a state employee's commission of criminal sexual conduct affects the credibility of the employer and reduces public confidence in the integrity of the employer, thus "interfer[ing] with and substantially affect[ing] his employment"). We agree with the ULJ that Henkel's commission of drug offenses had a significant adverse effect on the employment by harming the city's reputation, particularly because Henkel used a city-provided phone number and city-subsidized phone service to facilitate the illegal sale of marijuana.

We therefore conclude that the ULJ's decision that Henkel is ineligible for unemployment benefits is supported by substantial evidence and not affected by legal error.

**Affirmed.**